## Markham, Appellant, *v.* Merrett *et al.*

An infant *feme covert* is not estopped by a relinquishment of dower made during coverture.

If a *feme covert* relinquish dower during her infancy, she will not be compelled to refund any portion of the purchase money received by her husband, if she afterwards claim dower.

Where two persons formed a mercantile co-partnership for the purpose of carrying on business, but afterwards, by mutual consent, extended their business to the buying and selling of lands and town lots, conveying, not in the partnership style, but in their individual names, as tenants in common, it was held that the lands and lots so conveyed by the members of the firm were subject to the dower of the widow of one of the deceased partners.

The widow is endowable according to their value at the time of alienation by the husband.

APPEAL from the probate court of the county of Yazoo.

In December, 1841, Elizabeth Markham filed her petition in the probate court of the county of Yazoo, claiming dower in certain town lots and lands described in the petition. The petitioner alleged that she married with Lewis B. Markham, in 1833, and that he departed this life in 1840, leaving the petitioner a widow without children; that Markham was seized during their marriage of the lands out of which dower was claimed. The appellees were made parties defendants to the proceedings, and plead the relinquishment of dower by the claimant, made during coverture, to which she replied that she was under twenty-one years of age at the time of the relinquishment, which response was sustained by proof.

The respondents further answered that L. B. Markham was never seized of said lots, except jointly with one Vincent Galloway, and as his co-partner, and that said land was jointly held by

Galloway & Markham, and by them disposed of as partnership property and for partnership purposes.

The claimant replied that Markham & Galloway never were seized and possessed of said lands as co-partners, but as tenants in common, or joint tenants only; and that said lands never were disposed of by them as co-partners, or as partnership property, but as individual holders or tenants in common.

Vincent Galloway having accepted releases as to his covenants of warranty, his deposition was read on the trial. He deposed that he and Markham formed a co-partnership about March, 1833, for the purpose of transacting a mercantile business, which was afterwards, by consent, extended to the purchase and sale of town lots, negroes, lands, plantations, and to planting, &c., and was dissolved by mutual consent about February, 1837; and that the interest of the partners in said firm was equal; that the lands conveyed to said firm, during its existence, was conveyed as partnership property and on the partnership account, and constituted a part of the property of the firm. The lands in which dower was claimed had been conveyed by the firm during its existence.

The record stated that the claimant "read in evidence various records of deeds showing seizen in L. B. Markham during coverture with said Elizabeth, of those lands in the petition claimed, and which are not contested in this suit." The conveyances of Markham & Galloway were not set out in the record; but, from the description of them, it was inferred that the grantors conveyed as tenants in common.

Dower in lot No. 232 was resisted on the ground that Markham held it in trust during his life. The record stated that "demandant read in evidence record of deed of Markham to H. G. Runnells, conveying lot 232, in Yazoo city, for the consideration of one thousand dollars." Galloway, in his deposition, stated that this lot never was partnership property. It was purchased by Markham at a trust sale, and conveyed by him to Runnells; and deponent understood Markham to say that he bid it in for the accommodation of Runnells, and neither gave nor received any compensation for it.

Evidence was introduced upon the trial to establish the value of the improvements on the lots, made since their conveyance.

The court below refused dower to the claimant in the property held by the appellees, and also in lot 232.

An appeal was taken by the claimant to reverse that judgment.

PUGH for appellant.

The court below erred in refusing the prayer of the complainant.

1. Because the deed or relinquishment of an infant *feme covert* of her right of dower in her husband's lands is at least voidable.

2. The court erred in refusing dower in the lands of which the husband was seized and possessed during coverture, jointly with another, who were partners as merchants, but to whom the lands were granted and by whom sold individually, and in their individual names, and not as partners in trade, with individual covenants of warranty against them and their heirs.

3. The court erred in receiving the testimony of Vincent Galloway, the joint owner of the lands which are sought to be subjected to dower with the complainant's late husband, because the testimony contradicts the deeds of the said Galloway, the witness, to said lands, which the law will not permit; and because the witness was interested in the results of this cause, in this : that he had sold said lands with covenants of warranty both of title and quiet enjoyment, and the success of the complainant would impeach his covenants.

First, the court below erred because it was in proof that at the time the complainant signed the deeds, or conveyed her interest in the lands in controversy, she was an infant *feme covert.* Had she acquired these lands after the marriage and independent of her husband, or the fee had vested in her before the marriage, it is clear that any conveyance of them by her during her minority would be at least voidable by her, whenever the disability arising from her coverture should be removed. Then, can any jurist contend that one who is incompetent to convey her own estate can convey her interest in the estate of another, to be acquired upon a future contingency? But this point has been so long settled for the complainant, both in England and America, that it will now admit neither of doubts or argument. I shall therefore content myself with referring the court to a few of the adjudicated

cases in point.   3 Com. Dig. 549, 550, 1st American from the 5th London edition; Lambert on Dower, 144, 145; Hearle *v.* Greenbank, 1 Ves. sen. 299; Shaw *v.* Boyd, 5 Serg. & Rawle, 39; Phillips *v.* Green, 3 Marsh. Ky. R. 9;   Jones *v.* Todd, 2 J. J. Mar. R. 361; Bool *v.* Mix, 17 Wend. 119; McCartee *v.* Teller and wife, 2 Paige, 511; and 3 Paige R. 117.

The principle involved in the second error assigned, I think has been adjudicated by this court favorable to the complainant, in the case of Woldridge *v.* Wilkins, in 3 Howard, 360.   But lest I am mistaken in the case cited, and for fear it does not meet the case at bar, I feel it my duty to present to the court what I think to be the true rule governing this cause.   If by possibility the heir at law of the husband could inherit the land, the widow is entitled to dower.   3 Com. Dig. title Dower, A. 6, p. 493.   In the case now before the court, the deeds are made to Lineus B. Markham, the late husband of the complainant, and Vincent Galloway, and to their heirs, thereby clearly indicating that they, at the time of the purchases, did not think they were purchasing as partners in trade, for in no one of the deeds is the firm name used.   They therefore purchased as joint tenants, and not as partners in trade. There are no articles of partnership proven to have been entered into by the partners, either by the records of the county in which these lands lie, or by the production of the articles.   I presume parol evidence of a parol agreement ought not to be received to control the tenure by which real estate is held, contrary to the express words and legal import of words used in title deeds.   This would be a most dangerous rule of evidence, and would unsettle and place in doubt most of the titles by which men hold their estates.

In this case I may venture to say there was no articles of copartnership entered into between the partners.   No agreement that these lands should be held by them as personalty, and not as realty, or at least none that this court should notice.   If I mistake not, in the case of Green *v.* Green, decided in Ohio, O. Rep. 244, there were articles of copartnership entered into, containing an express agreement that the lands purchased by the firm should be held and enjoyed as personalty and not as realty, and the land in controversy in that case was purchased expressly for the purpose

Markham, Appellant, *v.* Merrett *et al.*

of facilitating the partners in carrying on the legitimate business of the firm, and was absolutely necessary for the same, and so it is with all the other adjudicated cases (that I have been able to find) where dower has been refused in lands held by partners. The case at bar does not come within the rule laid down in the case of Green *v.* Green, or any of the cases therein cited. In that case, the deed and the articles of copartnership showed they purchased as partners and for the necessary conducting, with success and profit, the business of the firm. Here they purchased as individuals and joint tenants, and not with an eye to using the lands purchased in carrying on the business of the firm; nor were they ever used in that way. The business of the firm did not require them. They were merchants, and had no use for lands, except probably a house and lot in the place they done business, in which to carry on their trade. Their acts throughout show the *quo animo* with which they purchased, engaged, and conveyed. They buy, to them and their heirs, and they sell, as joint tenants, with individual covenants of title, and call upon the wife to relinquish her dower. If they held and enjoyed these lands as partners and viewed them as personalty only, for the necessary conducting their legitimate business, no right of dower could ever vest, and there could be no necessity of calling upon the wife to relinquish. Relinquish what? that which she never had. Well did they know the purchasing of these lands was foreign to the business of the partnership, and that upon the seisin of the husband the right of dower accrued, and would upon the contingency of the prior death of the husband, vest in the wife surviving. And hence it is, in every case, we find them attempting to bar this right by calling upon the wife and making her a party to the deeds. Can it be doubted that if Markham had died seized and possessed of these lands, under the deeds conveying them to L. B. Markham and Vincent Galloway, and their heirs, that the undivided half or moiety would have descended and vested in his heirs at law, and not have passed to his surviving partner, or to his personal representatives? Or could the surviving partner Galloway, by his separate deed have conveyed any more than his undivided half or moiety? Most clearly not, and especially in the face of the statute of this state, which destroys the right of survivorship, empowers

joint tenants to pass their interest by devise, and subjects it to payment of debts, to curtesy, and to dower.   Rev. Code, 236; How. & Hutch. 357.

The law merchant is confined to trade and commerce, to dealing in articles of mutation, and does not extend to buying and selling of lands.  If men, entering into co-partnership as merchants, whose legitimate business is to trade in goods and chattels, wares and merchandise only, will travel out of the line of their business and buy and sell real estate, they must do it subject to the rules of law established for the government of this kind of property.

All legal writers agree that lands purchased by partners, on the death of one of the partners, descend to the heir, unless by express contract they hold the lands as personalty, and not as realty. Collyer on Part. 69, and cases there referred to; Bell *v.* Phyn, 7 Ves. 453, 425; 9 Ves. 500; 11 ibid. 665; 4 Mun. 316; Smith *et al.* assignees of McJimsey *v.* Jackson, 2 Edw. Ch. R. N. Y. 28.

The last case cited has in it nearly every feature of the one at bar, was elaborately argued, and the learned judge who decided it appears to have given the subject much care and attention.

It will be observed that the defendants derived their title to every part and parcel of land in controversy in this cause, from and through the late husband of the complainant, L. B. Markham, and hence they are estopped to deny his title, seizen or possession.

Thirdly. The reception of the deposition of Vincent Galloway was clearly erroneous, upon the grounds stated in that error assigned.  This deposition states that L. B. Markham and the witness were seized and possessed of the lands in controversy as partners in trade; the deeds by which they claimed show that they were seized and possessed jointly, as individuals, each of an undivided moiety—which testimony is plainly in contradiction of the deeds, and for that reason ought to have been rejected by the judge who tried the cause below.

The record in this cause shows that Galloway, the witness, was one of the grantors under whom the defendants claim, and who are resisting the claim of the complainant to dower, and who offer his testimony as legal evidence to explain, and even to contradict,

his own deed.  I had thought, before the trial of this cause below, that it was too well settled to admit of a doubt, that a grantor in a deed was an incompetent witness, even to explain it, much less to contradict it.  1 Phillips on Evidence, 47, note *a;* 6 Johns. Rep. 526.

·"All who claim under a sealed instrument are estopped thereby."  Dunn *v.* Cornell, 3 John. C. R. 174.

Here the defendants claim under the deeds of Galloway & Markham, and yet they introduced Galloway as a witness to contradict the titles through which they claim, and even to change the tenure by which the witness held; for such is the effect of his testimony.

"Recitals in a deed of land are evidence against those making them, or any person claiming under them; they estop parties and privies—privies in blood, in estate, and in law."  9 Wend. 209.

"There is no rule of evidence more universally acknowledged than that by which it is laid down that parol evidence shall not be given to control or contradict, to enlarge or abridge, any instrument in writing, or to destroy the legal operation or construction of a deed—as by heirs was meant heirs of the body."  1 Caine's R. 385, note *a,* and cases there referred to.

The admission of this testimony, for the purpose for which it was introduced, was in violation of every principle regulating the law of evidence, and should have been rejected by the court who tried the cause.  Yet upon this testimony, and this alone, the complainant was barred of a recovery.  For proof of this position, reference is made to 2 Starkie on Ev. 544, 545, 546, 548 and 551; 1 Sug. on Ven. side page 152; 4 Cruse's Dig. 304, 305, chap. 19, sec. 45; 2 Atk. R. 384; 13 Pet. 104; 1 John. Ch. R. 429; 16 ibid. 306; 12 John. 427; 2 Starkie on Ev. 555, note 1.

R. S. HOLT for appellees.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

The appellant filed her petition in the probate court of Yazoo county, praying that dower might be allotted her in certain lands and town lots, of which her husband Lineus B. Markham had been seized during coverture, particularly by specifying each tract of land and town lot.  Her claim was resisted by the appellees,

Merrett and four others, all holding separate lots in the town of Manchester, and the court having decreed in favor of the appellees, this appeal was taken.

The appellees all except one insisted in their separate answers that Markham was not in his life time seized of the lots claimed by them, except as a partner with Vincent Galloway, and also on relinquishments made by demandant.   To avoid the relinquishments, the demandant replied infancy, which being fully sustained by the proof, and no subsequent act of ratification shown, cannot be seriously questioned.   It is. insisted, however, that before she can be entitled to dower, she must restore a proper proportion of the purchase money ; and secondly, that she is not entitled to dower, because the lands and town lots were purchased and sold as partnership property.

Wherever the contracts of infants are voidable merely, they are in some instances required to restore the consideration received, before they are allowed to avoid them.   Thus, in executed contracts for chattels, the purchase money must be restored, and perhaps the same rule might be justly applied as to real estate.   When goods have been sold to an infant on a credit, if he wish to rescind he must restore them.   But in this instance, we have no evidence that Mrs. Markham received any thing, and her right to avoid cannot therefore be placed on the condition that she pay back.   We have seen no authority which would justify us in holding her bound to pay back a part of the purchase money received by her husband.   The case therefore must turn exclusively on the other question, to wit: is the wife entitled to dower in lands which Markham held in his life time in partnership with Vincent Galloway, and which were sold during coverture ? · We hold the affirmative of this proposition, and think that under the circumstances of the case, there can be no doubt about the correctness of our conclusion.

It is true, that there may be cases in which a wife will not be entitled to dower in land held in partnership, but the reason is obvious, and cannot apply in a case like the present.   When land is held by a firm, and is essential to the purposes and objects of the partnership, then it is regarded as a part of the joint stock, and will be regarded in equity as a chattel.   Or if it be apparent from

the contract of partnership that it was designed to constitute a part of the joint stock, and to be sold as such for the payment of debts, and the surplus divided, then it will be so regarded in equity, being there treated as that species of property into which it was designed to be converted. This distinction, I apprehend, furnishes the ground on which dower is to be allowed or disallowed in chancery. But to what extent, or to what portion of the real estate held by a partnership, a court of chancery will apply this rule, and consider it as joint stock convertible into personalty, is a question which seems to have been much mooted, and which is even now in rather an unsettled state. The earlier decisions in England went no further than to apply the rule to such real estate as was absolutely necessary for the purposes of the partnership, or to such as was by the agreement of the parties to be held as joint stock, and sold and applied as such at the dissolution of the firm. The later decisions there seem to incline towards the propriety of considering all lands held by a partnership as standing on the same footing.

. One reason which induced the courts to favor a change of the rule was, that it was unjust to prefer the rights of the heir at law, when the whole family may have been induced to look to it and consider it as a common fund for the benefit of all when the firm should be dissolved. This reason could have no weight here, the right of primogeniture being abolished. Still some of the courts of this country seem inclined to follow the modern English rule to its full extent. We are not inclined to discuss this vexed question, as the case before us does not require that we should decide between the conflicting authorities. I apprehend that no case can be found which would furnish an authority for the interposition of a court of chancery, unless the case should present one of the following features. 1. That the land held by the partnership was necessary to pay the debts of the firm. 2. That by the contract of partnership it was agreed to be treated as joint stock, and sold at the dissolution. 3. That the parties themselves had considered it as personalty and part of the joint stock. Or, 4. That a sale was necessary to make proper distribution. In a case which presented any of these questions, a court of equity might possibly treat the land as personalty; but this is a question exclusively of

equity jurisdiction, and we are in this case not deciding it in that capacity, nor do we think the facts would justify the application of the power, even if we had it.

The articles of partnership are not before us, but Galloway, one of the partners, after being released from his covenants, was examined as a witness. He says that the partnership was formed in 1833, for carrying on a mercantile business, which was afterwards extended by mutual consent to the purchase and sale of town lots, tracts of land, plantations, and to planting, and the record shows that a very extensive business of this sort was done. These purchases were not made for the purposes of the firm, according to its original design. They were not necessary to enable the parties to carry on a mercantile establishment, nor have we any evidence that the lands so purchased were by the contract to be considered as personalty. They did not themselves treat the land as personalty or joint stock; they conveyed not by their partnership name, but as individual tenants in common, and in every instance a relinquishment of dower was taken, showing that they considered that they were making an ordinary conveyance of land. The purchase of land with the joint fund constituted them tenants in common, and might be regarded as a division of the fund to that extent. The lands in which dower is claimed were sold during coverture, and this necessarily cuts off the inquiry as to whether they are to be considered as a part of the joint stock. No one who has an interest in that stock is contesting the claim. The land is now beyond even the reach of the convertible power of a court of equity, and even if it would under different circumstances treat it as personalty for the purpose of closing the firm, paying the debts and dividing the surplus, it cannot now be so treated.

It is now the case of a tenant in common who has conveyed without valid relinquishment of dower. The statute is express that the widow shall be endowed of lands of which her husband died seized, or which he had before conveyed, in which dower had not been relinquished. In support of this view of the subject, I refer to Green *v.* Green, 1 Hammond's Rep. 535; Bell *v.* Phyn, 7 Vesey, 458; Ripley *v.* Waterworth, *Ib.* 425; Colyer on Partnership, 70 to 77; Roper on Husband and Wife, 345; Park on Dower,

Markham, Appellant, *v.* Merrett *et al.*

106–7 ; 6 Yerger, 20; Sumner *v.* Hampson, 8 Ohio Rep. 328; 11 Mass. Rep. 470.

It seems that dower in lot 232 was refused by the court because it was held in trust, this lot having been conveyed by Markham only.   The deeds are not set out at length, but it is agreed that they are properly described.   The record states that "demandant read in evidence record of deed of Lineus B. Markham to H. G. Runnels, conveying lot 232 in Yazoo City for the consideration of one thousand dollars."   From this description we learn nothing of a trust, and we cannot therefore decide the question in that way.

The rule in regard to allotting dower, when improvements have been made by the alienee will be found in the case of Wooldridge *v.* Wilkins, 3 Howard, 360.

The judgment must be reversed and the cause remanded.