## SHANKS *v.* KLEIN.

1. Real estate purchased with partnership funds for partnership uses, though the title be taken in the name of one partner, is in equity treated as personal property, so far as is necessary to pay the debts of the partnership and adjust the equities of the partners.
2. For this purpose, in case of the death of such partner, the survivor can sell the real estate; and, though he cannot transfer the legal title which passed to the heirs or the devisees of the deceased, the sale vests the equitable ownership, and the purchaser can, in a court of equity, compel them to convey that title.

APPEAL from the Circuit Court of the United States for the Southern District of Mississippi.

The facts are stated in the opinion of the court.

*Mr. William B. Pittman* and *Mr. J. Z. George* for the appellant.

*Mr. Edward D. Clark, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is a bill in chancery filed by John A. Klein and others against David C. Shanks, executor of the last will and testament of Joseph H. Johnston.

The substance of the bill is, that in the lifetime of Johnston there existed between him and Shepperd Brown a partnership, the style of which was Brown & Johnston; that their principal place of business was at Vicksburg, in the State of Mississippi, where they had a banking-house; that they had branches and connections with other men in business at other places, among which was New Orleans; that they dealt largely in the purchase and sale of real estate, of which they had a large amount in value on hand at the outbreak of the recent civil war; that this real estate was in different parcels and localities, and was bought and paid for by partnership money, and held as partnership property for the general uses of the partnership business; and that early in the war, namely, in 1863, Johnston died in the State of Virginia, where he then resided, leaving a will by which all his property, including his interest in the partnership, became vested in Shanks, who was appointed his executor.

It seems that both Brown and Johnston were absent from Mississippi and from New Orleans during the war, — the one being in Virginia and the other in Georgia. Upon the cessation of hostilities, Brown returned to New Orleans, and visited Vicksburg to look after the business of the firm of Brown & Johnston, and the other firms with which that was connected. Finding that suits had been commenced by creditors of the firm against him as surviving partner, and, in some instances, attachments levied, he became satisfied that unless he adopted some mode of disposing of the partnership property and applying its proceeds to the payment of the debts in their just order, the whole would be wasted or a few active creditors would absorb it all. Under these circumstances, acting by advice of counsel, he executed a deed conveying all the prop-

erty of the firm of Brown & Johnston to John A. Klein, in trust for the creditors of that partnership, and providing that the surplus, if any, should be for the use of the partners and their heirs or devisees. Klein accepted the trust, and pursuant thereto paid debts with the lands, or with the proceeds of the sale of them.

There is an allegation that Shanks, while acting as executor, and about the time the deed of trust was made, had an interview with Brown, and, being fully informed of the condition of the affairs of the partnership, expressed his approval of what Brown intended to do. This is denied in the answer, and some testimony is taken on the subject. Other questions of bad faith on the part of Brown are raised. But in the view which we take of the case the record establishes that Brown acted in good faith, and did the best that could be done for the creditors of the partnership and for those interested in its property.

It appears that after all this property had been sold to purchasers in good faith, Shanks, as executor of Johnston's will, instituted actions of ejectment against them. They thereupon filed this bill to enjoin him from further prosecuting the actions, and compel him to convey the legal title to the real estate which came to him by the will of his testator. A decree was rendered in conformity with the prayer of the bill, and Shanks appealed.

Being satisfied, as already stated, of the fairness and honesty of the proceedings of Brown and Klein and of the purchasers from them, and waiving as of no consequence, in regard to the principal point in the case, the allegation of Shanks's concurrence in or ratification of Brown's action, we proceed to consider the question as to the power or authority of Brown, the surviving partner, to bind Shanks by the conveyance to Klein, and by the sales thereunder made.

There is no doubt that in the present case all the real estate which is the subject of this controversy is to be treated as partnership property, bought and held for partnership purposes within the rule of equity on that subject. Nor is it denied by the counsel who have so ably argued the case for the appellant that the equity of the creditors of the partnership to have

their debts paid out of this property is superior to that of the devisee of Johnston. Their contention is that this right could only be enforced by proceedings in a court of justice, and that no power existed in Brown, the surviving partner, to convey the legal title vested in Shanks by the will of Johnston, nor even to make a contract for the sale of the real estate which a court will enforce against Shanks as the holder of that title.

Counsel for the appellees, while conceding that neither the deed of Brown to Klein, nor of Klein to his vendees, conveyed the legal title of the undivided moiety which was originally in Johnston, maintain that Brown, as surviving partner, had, for the purpose of paying the debts of the partnership, power to sell and transfer the equitable interest or right of the partnership, and of both partners, in the real estate, that the trust deed which he made to Klein was effectual for that purpose, and that by Klein's sales to the other appellees they became invested with this equitable title and the right to compel Shanks to convey the legal title.

One of the learned counsel for the appellant concedes that at the present day the doctrine of the English Court of Chancery "extends to the treating of the realty as personalty for all purposes, and gives the personal representatives of the deceased partner the land as personalty, to the exclusion of the heir," and that the principle has "acquired a firm foothold in English equity jurisprudence, that partnership real estate is in fact in all cases, and to all intents and purposes, personalty." He maintains, however, that the principle has not been carried so far in the courts of America; that the extent of the doctrine is that the creditors of the partnership and the surviving partner have a lien on the real estate of the partnership for debts due by the firm, and for any balance found due to either partner on a final settlement of the partnership transactions; and that the right of the surviving partner, and of the creditors through him, is no *more than a lien*, which cannot be asserted by a sale, as if the property were personal, but to the enforcement of which a resort to a court of equity is necessary.

We think that the error which lies at the foundation of this

argument is in the assumption that the equitable right of the surviving partner and the creditors is nothing but a lien.

It is not necessary to decide here that it is not a lien in the strict sense of that word, for if it be a lien in any sense it is also something more.

It is an equitable *right* accompanied *by an equitable title*. It is an *interest in the property* which courts of chancery will recognize and support. What is that right? Not only that the court will, when necessary, see that the real estate so situated is appropriated to the satisfaction of the partnership debts, but that for that purpose, and to that extent, it shall be treated as personal property of the partnership, and like other personal property pass under the control of the surviving partner. This control extends to the right to sell it, or so much of it as may be necessary to pay the partnership debts, or to satisfy the just claims of the surviving partner.

It is beyond question that such is the doctrine of the English Court of Chancery, as stated by counsel for appellant. As this result was reached in that court without the aid of any statute, it is authority of very great weight in the inquiry as to the true equity doctrine on the subject.

We think, also, that the preponderance of authority in the American courts is on the same side of the question.

In the case of *Dyer* v. *Clark* (5 Metc. (Mass.) 562), that eminent jurist, Chief Justice Shaw, while using the word "lien" in reference to the rights now in controversy, asks, "What are the true equitable rights of the partners as resulting from their presumed intentions in such real estate? Is not the share of each pledged to the other, and has not each an equitable lien on the estate, requiring that it shall be held and appropriated, first, to pay the joint debts, then to repay the partner who advanced the capital, before it shall be applied to the separate use of either of the partners? The creditors have an interest indirectly in the same appropriation; not because they have any lien, legal or equitable (2 Story, Eq., sect. 1253), upon the property itself; but on the equitable principle that the real estate so held shall be deemed to constitute a part of the fund from which their debts are to be paid before it can be legally or honestly

diverted to the private use of the parties. Suppose this trust is not implied, what would be the condition of the parties?" &c. "But treating it as a trust, the rights of all the parties will be preserved." It is clear that in the view thus announced the right of the creditors is something more than an ordinary lien.

In *Delmonico* v. *Guillaume* (2 Sandf. (N. Y.) Ch. 366), where the precise question arose which we have in the present case, the Vice-Chancellor held that "Peter A. Delmonico, as the surviving partner, became entitled to the Brooklyn farm, and as between himself and the heir of John he had an absolute right to dispose of it, for the payment of the debts of the firm, in the same manner as if it had been personal estate."

In so deciding he followed the English authorities, and cited *Fereday* v. *Wightwick*, 1 Russ. & M. 45; *Phillips* v. *Phillips*, 1 Myl. & K. 649; *Brown* v. *Brown*, 3 id. 443; *Cookson* v. *Cookson*, 8 Sim. 529; *Townshend* v. *Devaynes*, 11 id. 498, note.

In *Andrews's Heirs* v. *Brown's Adm'r* (21 Ala. 437), the Supreme Court said that, "inasmuch as the real estate is considered as personal for the purpose of paying the debts of the firm, and the surviving partner is charged with the duty of paying these debts, it must of necessity follow that he has the right in equity to dispose of the real estate for this purpose, for it would never do to charge him with the duty of paying the debts and at the same time take from him the means of doing it. Therefore, although he cannot by his deed pass the legal title which descended to the heir of the deceased partner, yet as the heir holds the title in trust to pay the debts and the survivor is charged with this duty, his deed will convey the equity to the purchaser, and through it he may call on the heir for the legal title and compel him to convey it."

In *Dupuy* v. *Leavenworth* (17 Cal. 262), Chief Justice Field, in the name of the court, said: "In the view of equity it is immaterial in whose name the legal title of the property stands, — whether in the individual name of the copartner, or in the joint names of all; it is first subject to the payment of the partnership debts, and is then to be distributed

among the copartners according to their respective rights. The possessor of the legal title in such case holds the property in trust for the purposes of the copartnership. Each partner has an equitable interest in the property until such purposes are accomplished. Upon dissolution of the copartnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest, and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal title."

If the case could be held to be one which should be governed by the decisions of the courts of Mississippi, because the principle is to be regarded as a rule of property, which we neither admit nor deny, the result would still be the same.

In one of the earliest cases on that subject in the High Court of Errors and Appeals of that State, *Markham* v. *Merritt* (8 Miss. 437), Chief Justice Sharkey, in delivering the opinion of the court, concurs in the general doctrine that " when land is held by a firm, and is essential to the purposes and objects of the partnership, then it is regarded as a part of the joint stock, and will be regarded in equity as a chattel." A careful examination of the Mississippi cases cited by counsel has disclosed nothing in contravention of this doctrine, or in denial of the authority of the surviving partner to dispose of such property for the payment of the debts of the partnership.

We are of opinion, therefore, that the purchasers from Klein acquired the equitable title of the real estate conveyed to him by Brown, that they had a right to the aid of a court of chancery to compel Shanks to convey the legal title to the undivided half of the land, vested in him by the will of Johnston.

*Decree affirmed.*