## CLAY *v.* FIELD *et al.*

*(District Court, N D. Mississippi, W. D.* March 22, 1888.*)*

1. PARTNERSHIP—RIGHT OF SURVIVOR TO CONTINUE BUSINESS.

   The surviving partner in a cotton plantation, before the late war, not being authorized by the articles of copartnership, or the will of the deceased partner, was not authorized to continue the partnership business, after the death of the deceased partner, longer than was necessary to gather and sell the then growing crop.[1]

2. SAME—RIGHT OF SURVIVOR TO THE PERSONALTY.

   Upon the death of the deceased partner intestate, the title to the personal property, including the slaves belonging to the firm, vested in the surviving partner, for the purpose of being applied—*First*, to the payment of the partnership liabilities; *secondly*, for a division of the residue of any between the surviving partner and the personal representative of the deceased partner, according to the rights of each.[1]

3. SAME—LIABILITY OF SURVIVOR ACCOUNTING.

   It was the duty of the surviving partner to sell so much of the personal property, including the slaves, if necessary, to pay off debts due by the firm to himself or any other person, and to so apply it. Failing to do so, and continuing the planting business on the plantation, and with the slaves and other

---

[1] Respecting the rights and liabilities of the surviving partner, where a partnership is dissolved by the death of one partner, see Appeal of Shipe, (Pa.) 6 Atl. Rep. 103, and note, Klotz v. Macready, (La.) 2 South. Rep. 203; Brown v. Watson, (Mich.) 33 N. W. Rep. 493; Williams v. Whedon, (N. Y.) 16 N. E. Rep. 365.

personal property of the firm, he is liable to account for a reasonable rent for the land and hire for the slaves and personal property, after he should have sold so much of the property as was necessary to pay the debts against the firm, including the indebtedness to himself as a creditor of the firm; and was entitled to the crops raised during the time he was liable for rents and hire.[1]

4. SAME—TITLE TO PARTNERSHIP REALTY.

The legal title to the lands owned by the firm, they being equal partners, upon the death of the deceased partner vested in the surviving partner and the heir at law of the deceased partner as tenants in common, subject to the dower right of the widow of the deceased partner out of one moiety of the land; but the equitable title to said land vested in the surviving partner, so far as the same was necessary to pay the liabilities of the partnership, including that due the surviving partner as a general creditor, or any balance due him on a settlement of the partnership accounts. The surviving partner had a right to sell the land, if necessary for said purpose, publicly or privately, and a court of equity would have compelled the heir at law to convey the legal title vested in him to the purchaser.[1]

(*Syllabus by the Court.*)

In Equity.
*Nugent & McWillie*, for complainant.
*Frank Johnston, Edward Mayes*, and *Mr. McKeighan*, for defendants.

HILL, J. This cause is submitted upon bill, amended bill, answers, exhibits, and proof, from which the following facts appear: In September, 1854, David I. Field and C. I. Field, brothers, residing in the state of Kentucky, formed a copartnership for the purpose of purchasing a cotton plantation in this state, slaves, mules, etc., to be conducted by D. I. Field, who was to reside on the plantation, and control and manage the same. Each party contributed one-half the capital stock, and each was to share equally in the profits and losses. In pursuance to this agreement, a plantation, slaves, mules, etc., were purchased. D. I. Field resided on the plantation, and managed the business up to his death, which occurred in September, 1859. D. I. Field died intestate, and left the defendant (now Mrs. Freeman) his widow, and the defendant D. I. Field, his only child and heir at law. Being then an infant, E. H. Field, another brother, was appointed administrator on the estate of D. I. Field. C. I. Field took the paramount control of the partnership property, but placed said E. H. Field in the immediate possession and control of the property, for the reason assigned by him, that the slaves would be better satisfied, and more easily managed. Mrs. Freeman, the widow, then Mrs. D. I. Field, was with her son in Kentucky, when her husband died, and never afterwards came to this state. The crop of 1859 was gathered and sold and applied to the payment of the debts of the firm. The business was continued by C. I. Field through the years 1860, 1861, 1862, and commenced in 1863, but C. I. Field, [then in possession of the property, real and personal, both as surviving partner, and as administrator of D. I. Field,—E. H. Field having resigned his administration, and he having been appointed in his place,] being apprehensive that the slaves would leave and go to the United States army, took all but some of the women and children to Texas, and remained

[1]See foot-note on preceding page.

there with them until after the close of the war, when he returned with them, and employed them on the plantation during the year 1866, after which he abandoned the cultivation of the plantation,—the slaves having been emancipated, as the result of the war,—and leased out the lands for the next year. C. I. Field died intestate the 18th day of July, 1867, when Brutus J. Clay administered upon both the estates of D. I. Field and C. I. Field, and took possession of the lands, and leased them out, until there was an attempted sale of them by him under the decree of the probate court of Bolivar county; and they were bid off by the complainant Pattie A. Clay,—she being the only child and heir at law of C. I. Field, his wife having died some time before his own death,—and who has retained possession of them ever since, except a portion of the same assigned as dower to Mrs. Freeman as the widow of D. I. Field, by decree of this court. The crop raised in the year 1860 was gathered, sold, and the proceeds applied to the payment of the debts of the firm; that raised in 1861 and 1862 was raised and gathered, but not sold,—and was burned by the Confederate soldiers, under orders of their commanders. The mules and other personal property were destroyed, or scattered and lost. The individual property of D. I. Field was sold and applied to the payment of his individual debts, and the support of his wife and child; also they received some support from the partnership assets. C. I. Field being a man of wealth, furnished from time to time money to the firm as its creditor, which appears from the written notes or acknowledgments executed by D. I. Field in the name of D. I. Field & Co.,—the firm name under which the firm business was conducted,—and which are in the words and figures as follows:

"On or before the 1st day of January, 1858, the concern of David I. Field & Co. will be owing C. I. Field the sum of seven thousand three hundred and eighty-seven dollars and thirty-one cents, ($7,387.31,) for money advanced the concern, for payment of the Leach land, and cash advanced for the purchase of negroes in Kentucky, in the summer of 1856, to bear six per cent. interest from maturity to when due. *This 23d day of December,* 1856. D. I. FIELD & Co. [Seal.]"

"The concern of David I. Field & Co. is owing to C. I. Field the sum of five thousand six hundred and sixty-six and two-third dollars, ($5,666⅔,) it being that amount advanced by him of payment to Kirk balance on concern note, due him 1st day of January last. He is to be paid six per cent. for said amount from date until paid. *This 20th March,* 1857. DAVID I. FIELD & Co."

"Due C. I. Field or order, the sum of eleven hundred dollars, ($1,100,) it being money this day advanced by paying to William Kirk, through his draft on Hewitt Norton & Co., of New Orleans. *This 5th day of June,* 1858. D. I. FIELD & Co."

"Due C. I. Field or order, one thousand three hundred and eighty-nine dollars and twenty-one one-hundredth dollars, ($1,289.29,) for value received on settlement to this date, June 13, 1859. D. I. FIELD & Co."

C. I. Field, after the death of D. I. Field, probated the one-half of the amounts stated in these written obligations against the estate of D. I. Field, but died without taking further steps to enforce payment of the same; but after Col. Brutus J. Clay became the administrator, he took

steps to have the estate of D. I. Field declared insolvent by the probate court of Bolivar county, and obtained a decree of that court for a sale of the interest which said D. I. Field had in these lands at the time of his death for the payment of the amount claimed to be due upon these obligations from the estate of D. I. Field, being the one-half due upon the four obligations, with interest. The land was offered for sale to the highest bidder,—that is, the one-half undivided interest,—when the same was struck off to Mrs. Pattie Clay, the complainant, who, as before stated, went into possession of the same, which she still holds, except that portion assigned to Mrs. Lucy Freeman as her dower in said lands. This sale has been held void. The purpose of this bill is to subject the interest which D. I. Field had in these lands to the payment of the one-half of the amount of these written obligations, with interest, less one-half of whatever may have been received from the rents and profits thereof since the death of said D. I. Field, after payment for taxes, improvements, and other charges against said lands. These written obligations are not copied from the originals, which it is alleged were destroyed by fire, but from copies shown to have been taken from them before their destruction. The defendants claim, first, that the due-bill dated June 13, 1859, was taken from the balance then due on the three former obligations, and to close all accounts and indebtedness then due from the firm to said C. I. Field up to that date. It was evidently given to close some settlement, but what was included in it is uncertain, both parties being now dead, and there being no one to explain the transaction. The proof does not show sufficient means belonging to the firm to pay off this indebtedness and the other liabilities of the firm shown to have existed; therefore I conclude it did not embrace them. There is other proof going to show an indebtedness from the firm to C. I. Field after the death of D. I. Field.

It is insisted upon the part of the defendants, that if these obligations were not paid at the death of D. I. Field, that they were canceled by the negligence of C. I. Field as surviving partner to sell so much of the personal property, including, if necessary, the slaves, to pay off this indebtedness which it is insisted should have been done during the year 1860, when such property brought a high price, and before its destruction; that this personal property was then of much larger value than the amount due on these obligations, and all other indebtedness of the firm. I am satisfied from the proof that this indebtedness did exist against the firm, but not against D. I. Field individually, and that all the attempted proceeding to collect the same against the estate of D. I. Field by a sale of the lands was based upon a mistaken theory, and without authority, and are consequently void. Upon the death of C. I. Field the title to all the personal property, including the slaves, belonging to the firm, vested in C. I. Field, as surviving partner, whose duty it was to have sold so much of it, within a reasonable time, to pay off this and all other indebtedness against the firm. This he had the power to do, without the order or decree of any court, either publicly or privately, and if that was insufficient might have sold so much of the land as was necessary

in the same way. The legal title to the lands was vested in said C. I. Field and the defendant D. I. Field, to be sure; but the equitable title was vested in C. I. Field, for the purpose of paying off the indebtedness due himself, as well as all others, including any balance due him on settlement of the partnership accounts, and a court of equity would have compelled D. I. Field, the defendant, to convey the legal title to the purchaser. This question was fully settled in the case of *Shanks* v. *Klein*, 104 U. S. 18, and reference to other authorities is unnecessary on this point. The question is, did C. I. Field, by this neglect, render himself liable for the loss of this personal property, and the value of the slaves, as to the interest of defendants therein, or estop himself from setting up the claim here made. Considering the relationship of the parties, and all the circumstances, it would perhaps be inequitable to hold so strict a rule; but I am satisfied that he had no power to continue the operation of the plantation with the firm slaves, mules, and other property belonging to the firm, as a continuation of the firm business, during the years 1861, 1862, and 1863, and that he was liable for a reasonable rent for the land and hire of the slaves, stock, and other property used in the cultivation of the plantation during the years 1861 and 1862, to be applied to the payment of these obligations,—no other indebtedness is shown now to exist,—and that, as C. I. Field and his administrator, Brutus J. Clay, and the complainant, since her attempted purchase, has been in the possession of all the lands, with the exception of Mrs. Freeman's dower, since its assignment, the complainant must be charged with a reasonable rent for the lands and the hire of the slaves, mules, and other property used in making the crops of 1861 and 1862, and for a reasonable rent of the lands since the 1st of January, 1866, omitting the years 1863, 1864, and 1865; that such rents, and those for 1861 and 1862, be credited upon the amount due upon the obligations given to said C. I. Field, with interest up to the 1st of January, 1863, and that the rents accruing commencing with the 1st of January, 1866, with interest for 1866, on the 1st day of January, 1867, and so on from year to year up to the present time. The rents and hire to be estimated at what would be a fair and reasonable rent, or hire to a solvent tenant for cash, taking the plantation and property as a whole, and crediting the complainant, with the amounts paid for taxes and for such improvements as were necessary to rent the lands at a reasonable price; also for the value of such improvements as may have added to the permanent value of the lands,—not what they cost, but the value that they permanently may have added to the lands.

It is insisted that the complainant should be considered as a mortgagee in possession, and only chargeable with the rents actually received. I am of opinion that as C. I. Field neglected to sell the personal property when he should have done so, and by which neglect it was wholly lost to the defendants, that complainant is not entitled to be considered as a mortgagee in possession, and only liable for the rent received. The cause must be referred to a master to take and state an account under the rules stated, and report the same to the next term of court. As C.

I. Field was chargeable with the rents and hire for 1861 and 1862, he was entitled to the crops for those years; and, being the sole owner, the loss as a matter of course was his alone.