RUNNER v. WOITKE.

(Third Division. Fairbanks. May 1, 1905.)

No. 222.

FRAUDS, STATUTE OF—PARTNERSHIP—AGENCY—SALE OF REAL ESTATE BY PARTNER.
  Where real estate is held by a mercantile firm as an aid to its mercantile business, and the title stands of record in the names of the partnership and the partners severally as tenants in common, and no necessity is shown for one partner selling it to pay present debts, after first exhausting the partnership personal.

property in such payment, one partner cannot sell and convey another partner's interest by deed or otherwise, unless authorized to do so in writing, as required by the Code.

Plaintiff brings this action to recover one-third interest in lot and building in Fairbanks, sold to defendant, Woitke, by Taylor, plaintiff's partner. His authority to sell is denied.

Claypool, Stevens & Cowles, for plaintiff.

Bion A. Dodge, for defendant.

WICKERSHAM, District Judge.   There are two questions to be considered in determining this action:   (1) Did the deed made by Taylor convey Runner's legal estate in the lot in dispute to Woitke; and (2) if previously unauthorized, did Runner subsequently ratify the transfer and cure the defect for the want of power?

The statute of Alaska (Code Civ. Proc.) declares that:

"Sec. 1044. In the following cases an agreement is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged, or by his lawfully authorized agent.   *   *   *

"(6) An agreement for leasing for a longer period than one year, or for the sale of real property, or of any interest therein, or to charge or incumber the same:

"(7) An agreement concerning real property made by an agent of the party sought to be charged, unless the authority of the agent be in writing."

"Sec. 1046. No estate or interest in real property, other than a lease for a term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating, transferring or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."   Carter's Ann. Alaska Codes, pp. 354, 355.

Under these statutory provisions the transfer from Taylor to Woitke of Runner's title lacks every element of validity, without, as defendant's counsel contends, the facts establish

an exception to the general rule. His contention is that one general partner may sell all partnership real estate, though standing in the name of an absent and nonconsenting partner, where necessary to pay partnership debts, and that his deed, signed in the name of the absent and nonconsenting partner, will convey his equitable title; and that the purchaser may, by a suit in equity, compel the nonconsenting partner to transfer the legal title.

The principle offered is that, where a partnership is dissolved by the death of a member, its property is impressed with a trust to pay the firm's creditors, and such sales are supported upon that theory. In Shanks v. Klein, 104 U. S. 18, 26 L. Ed. 635, the Supreme Court of the United States defines the power of the surviving partner and the character of the title acquired by the creditor upon such a sale:

"It is an equitable right accompanied by an equitable title. It is an interest in the property which equity courts will recognize and support. What is that right? Not only that the court will, when necessary, see that the real estate so situated is appropriated to the satisfaction of the partnership debts, but that for that purpose, and to that extent, it shall be treated as personal property of the partnership, and like other personal property pass under the control of the surviving partner. This control extends to the right to sell it, or so much of it as may be necessary to pay the partnership debts, or to satisfy the just claims of the surviving partner."

In Dupuy v. Leavenworth the Supreme Court of California had previously extended the principle to a case where an absconding and defaulting partner had left behind him a bankrupt estate. The court held in that case:

"Under the special circumstances of this case, Shelly having absconded with all the available funds of the firm, leaving Norris without sufficient means to pay the debts of the copartnership, and the personal property having been, in good faith, first exhausted and found to be insufficient, it is not perceived why the same rule which governs as to the authority of the surviving partner should not apply. We are of the opinion that it does apply, and that under the circumstances stated the equitable right and interest to the one undivided

half, the legal title of which stood in Shelly's name, passed by the conveyance to Davis, and that the plaintiffs, representing Davis, and succeeding to his rights, are entitled to come into equity to compel a conveyance of the legal title from Shelly, or parties taking a conveyance from him with notice of its partnership character." 17 Cal. 263.

An examination of both these cases shows that the principle announced is based upon (1) the conceded necessity of the sale by the partners to pay partnership debts (2) after all personal property has been first exhausted in payment. If there are no partnership debts which the personal property will not pay, the principle will not support a sale by a partner of his absent and nonconsenting partner's real estate. We are, then, first to determine the fact (1) was it necessary for Taylor to sell Runner's interest in the lot to pay existing partnership debts (2) after exhausting the partnership personal property to pay them?

The partnership debt, which is offered as a necessity for and in support of the sale, was the partnership note for $500 due to the Dawson bank. An examination of the exhibits shows that all the receipted partnership bills offered in evidence by Taylor, except the note and one other for $43, were paid long prior to the sale. The evidence discloses that at the time Taylor sold the lot to Woitke he also sold him wood and bar fixtures for $100 and cigars and liquors for about $400; that a large quantity of beer and other personal property belonging to the partnership, the value of which is not shown, still remained in Taylor's hands. It is a fair conclusion from the testimony that Taylor had enough personal property belonging to the partnership in his hands on the date of the sale of the lot to Woitke, if he did not sell Woitke enough, to have paid all the partnership debts. The court cannot find as a fact that it was necessary for Taylor to sell the lot to pay the partnership debts, and concludes from the evidence that it was not necessary.

The defendant sought to show by the proofs that it was necessary for Taylor to sell the lot to obtain funds with which to carry on the next winter's prospecting, in pursuance to an agreement with certain grubstake prospectors, but the principle invoked cannot be extended so far. It was not shown by the evidence that Runner was dead or insolvent, or was unwilling or unable to pay his share of all the partnership debts, or had absconded, or was even out of the jurisdiction of this court, at the time of the sale of his real property by Taylor. It was conclusively shown that the partners left enough personal property with Taylor to pay their debts; that Runner gave Taylor no authority in writing to sell his real estate; that he was within the territory, and could have been communicated with by telegraph by either Taylor or Woitke at the time of the sale; and that Woitke bought with full knowledge of the facts. Oliver v. Piatt, 44 U. S. 333, 11 L. Ed. 622. The true rule applicable to and decisive of this case is that, when real estate is held by a mercantile firm as an aid to its mercantile business, and the title stands of record in the names of the partnership and the partners severally as tenants in common, and no necessity is shown for one partner selling it to pay present debts or obligations of the firm after having first exhausted the partnership personal property in such payment, one partner cannot convey another. partner's interest by deed, unless authorized to do so in writing, as required by statutes. Piatt v. Oliver, 19 Fed. Cas. 568, No. 11,116, affirmed Oliver v. Piatt, 3 How. (U. S.) 333, 11 L. Ed. 622; In re Codding (D. C.) 9 Fed. 849; Weld v. Johnson Mfg. Co., 86 Wis. 552, 57 N. W. 374; Lindley v. Davis, 7 Mont. 206, 14 Pac. 717; Anthony v. Butler, 13 Pet. (U. S.) 423, 10 L. Ed. 229; 17 Am. & Eng. Ency. of Law (1st Ed.) 960.

Defendant contends that, even if he did not authorize the sale, Runner afterwards ratified it, and ought to be bound thereby. No admitted ratification is shown, but the acts from

which it is attempted to be drawn are the writing of two letters by Runner to Taylor, and securing a sum of $417 forwarded by Taylor to Runner at St. Louis.

The evidence is conclusive that, as soon as Taylor notified Runner and Bishoprick at Skagway that he had sold the lot, they joined in a telegram denying his authority and repudiating the sale, and instructing him to store the remainder of the partnership goods. Ten months later Runner wrote to Taylor from St. Louis, asking him to "pay me my share of the money due me on settlement." Taylor sent him from Los Angles, Cal., in answer to this letter, express money orders for $417, upon receipt of which Runner again wrote him, saying: "I rec. money all O. K.," and, after discussing his trouble to be identified, he said: "I had hoped we would have gotten out better in the clean up of the business, but I have perfect faith in your integrity, and believe you have done all you could; many thanks." Prior to writing either of these letters Runner had started an agent to Alaska to make a settlement of this partnership matter, with instructions to begin a suit to recover his interest in this lot, and in his first letter to Taylor he wrote that the agent, "Miss Burke, is on the road to Alaska." Upon her arrival in Alaska Miss Burke sought Taylor, and on October 18, 1904, procured a settlement with him by which he paid to Runner, in addition to the St. Louis payment, $600 as the final balance due from him on the settlement of their partnership venture in the personal property, and not including what Taylor had received from Woitke upon the sale of the lot. On October 25, 1904, Miss Burke brought this suit for Runner to recover his interest in the lot. Whether or not Taylor was overreached, as he claims, in this settlement, the facts in relation to it do not show a ratification of the sale of the lot. The use of the words "settlement" and "the business" in his letters is explained by Runner as a reference to a settlement of the partnership trading business. The court cannot from

the evidence conclusively find that Runner accepted the $417 other than as a payment upon the settlement of that trading business. His actions are consistent from the beginning in refusing to ratify the sale of the lot, and the court must find that he did not intend to so ratify it.

The sale of Runner's interest in the lot was unauthorized; it was not necessary to pay partnership debts, and was not subsequently ratified by him. Woitke bought with full knowledge of Taylor's want of authority, which was apparent upon the face of his deed. The defendants claiming under Woitke are in no better position. Let findings and decree be for plaintiff in accordance herewith.