EVANS, Respondent, v. GIBSON, Appellant.

1. Where under a judgment against several persons for a partnership debt a levy is made upon partnership property or upon the private property of one partner, and one of the partners purchases the same at the execution sale, the sheriff's sale will not, it seems, operate in equity a transfer of the title to the purchaser; it will still be subject to levy under the same judgment if the same remain unsatisfied.
2. Where one partner expends the partnership funds in the purchase of property in his own name, he will hold the same in trust for the partners.
3. The relief afforded by the decree in a cause should conform to the case made out in the petition.

*Appeal from St. François Circuit Court.*

This was a suit by Jesse R. Evans and James S. Evans against James Gibson. The petition was substantially as follows: Plaintiffs state that the defendant, in 1854, entered into a contract in writing with Alfred Reed—who was at the time acting partner of the firm of A. Reed & Co., in which plaintiffs were partners, which firm was afterwards known under the style of J. S. Evans & Co. — to convey to said Reed or the firm two certain lots of ground in Kennett's square, of about an acre each; that said contract has been delivered over to defendant by Reed for the purpose of cheating and defrauding plaintiffs; that said lots were purchased by Reed for the firm, and he paid for them out of the means of the firm; that he improved them, expending some $1,000 or $1,200 in erecting substantial buildings upon said lots, out of the funds of the partnership; that Reed put only a small amount of money or property in the firm, and the said firm and its business was carried on mostly by the means and credit of plaintiffs; that Gibson was to receive for said lots eighty dollars; that he did receive, in part payment, thirty-seven dollars and seventy-eight cents in goods from the store of J. S. Evans & Co.; that afterwards James S. Evans, in behalf of himself and his partners, tendered Gibson fifty dollars as the balance of purchase money and demanded a conveyance.

Plaintiffs further stated that in 1856 judgments were rendered against said firm, composed of A. Reed, J. S. Evans, and Jesse R. Evans, which were a lien upon their interests in said land; that under one of these judgments in favor of James A. Eddy and others, an execution issued and was levied upon said lots, and James S. Evans became the purchaser; that the sheriff's deed conveyed to said J. S. Evans all the right Reed had at the date of the rendition of the judgment; that Reed, being the acting partner, used the property and cash of the firm for his own private purposes; that so soon as he found out that his iniquitous practices had been discovered, he, for the purposes of injuring plaintiffs, gave up to Gibson the written obligation for a deed for the lots above mentioned, advising Gibson to contend for the lots as his, and if he succeeded in cheating plaintiffs out of what they had expended in the purchase and improvement of said lots, to pay over to Reed a certain portion of the proceeds; that defendant had full knowledge of Reed's fraudulent designs and practices, and conspired to assist Reed in cheating them out of the lots and the money expended upon them. Plaintiffs bring into court the money that may be due Gibson on the purchase of said lots, and pray that he may be compelled to bring into court the written agreement above referred to; and that he may be compelled by a decree of court to convey the lots in question to plaintiffs.

It appeared in evidence that the judgment in favor of Eddy and others was rendered November 1, 1856. The title bond referred to was given up to Gibson November 21, 1856. There was evidence introduced tending to show that the lots were purchased and improved with partnership funds. After the evidence was closed, the court allowed the plaintiff to amend the petition by striking out the name of Jesse R. Evans as plaintiff, and rendered a decree vesting the property in the plaintiff James S. Evans.

*Noell* and *Carter*, for appellants.

I. The bill is multifarious, and mixes up equities of the

Evans v. Gibson.

firm of James S. Evans & Co. with the equity of James S. Evans as purchaser at the sheriff's sale. This sheriff's deed is, as to J. S. Evans, void. He could not, under the circumstances, purchase the property and hold it against the other partners. The court erred in admitting the sheriff's deed.

*Frissell*, for respondent.

I. As between Gibson and Reed there was an attempt to cheat and defraud James S. and Jesse R. Evans. The lots were purchased and improved with the funds of the copartnership.

NAPTON, Judge, delivered the opinion of the court.

The decree in this case appears to be based entirely upon the title acquired by the plaintiff, J. S. Evans, at the sale under execution against A. Reed & Co. As the judgment, under which this execution issued, had been obtained on the 1st of November, 1856, and the delivery of the title bond by Reed to the defendant did not occur until the 21st of November of the same year, the plaintiff, who purchased at the sheriff's sale, was supposed to have acquired all the title of Reed; so that, at the date of Reed's attempted relinquishment to Gibson, he had nothing in the land to relinquish. Hence the decree, after the name of Jesse R. Evans was stricken out from the case as plaintiff, was for James S. Evans, the purchaser of Reed's interest at the sheriff's sale, and the legal title of Gibson, the defendant, was vested solely in him.

The judgment of the court appears to be entirely independent of all the allegations of fraud and trust, which constituted the very basis upon which the petition was framed. The decree proceeds upon a theory of the case not assumed in the petition. Although the judgment against A. Reed & Co., in November, 1856, the execution, the sheriff's sale under it, and the purchase by one of the plaintiffs, are stated in the petition, yet they are not relied upon as constituting an independent ground for relief, but are merely referred

to in connection with the more specific charges of fraud and trust. The decree is therefore a complete departure from the pleadings, and is based upon a case not averred in the petition.

Aside from this objection, however, which is merely formal, we do not regard the purchase by Jas. S. Evans as having the effect which the circuit court seems to have attributed to it.

It is not material, in determining the character of this purchase, whether the lots are to be regarded as the property of the partnership or the individual property of Reed. The former is asserted throughout the petition, and is the theory which the plaintiffs could not of course controvert without a radical change in their bill. Upon this supposition, we have, then, a judgment and execution against a partnership, and partnership property levied on and sold to one of the partners. Will such a purchase be regarded in a court of equity as converting the property from the partnership to individual property of the purchasing partner? The debt for which the property is sold is the debt of all the partners, and the partner who bids is under as much obligation to pay it as either of the others.

If the lots belonged to Reed and not to the partnership, would the purchase transfer the property from Reed to J. S. Evans? Each partner and his individual property is liable for the debts of the concern, as well as the partnership property. If the sale could have the effect of transferring the title from Reed to J. S. Evans, it is clear that it would still, as the property of Evans, be subject to levy for the same debt, if the execution remained unsatisfied. We suppose a court of equity would, in such cases, regard the title as unchanged. It is the case of a tenant in common buying up an encumbrance, which a court of equity always has considered as enuring to the benefit of the common title.

If this be so, it is obvious that the merits of this case will not be affected by the sheriff's sale in November, 1856, and that this incident will not dispense with the necessity of an inquiry into the allegations of trust or fraud, and the case must be remanded with a view to this investigation.

It is, however, proper to add, as the case goes back, that the petition in this case, in any theory of relief sought, is singularly deficient. There is no allegation that the partnership of A. Reed & Co. has ever been dissolved, nor that any settlement has ever been had of the partnership concerns, nor that Reed is indebted to the partnership. There are allusions made in the petition to charges of embezzlement, from which it might be inferred that Reed was no longer a member of the partnership, and that the partnership had in fact ceased to do business, but these are mere conjectures. Nothing definite is stated in the petition on these points.

So far as the facts are developed by the testimony now in the bill of exceptions, it would seem that the important inquiry will be whether the lots in controversy were purchased with partnership funds; if so, whether the defendant was aware of the equitable interest of the other partners at the time he procured from Reed a delivery of the title bond; and if both these issues were found favorably to the complainants, they are certainly entitled to a decree in the event that Reed is no longer a member of the partnership, and that his accounts have been adjusted. The other judges concurring, the judgment is reversed and case remanded.