(Decided 13th January, 1893.)

---

\*JOHN H. RILEY, and others *vs.* JOHN M. CARTER
and MATTHEW K. AIKEN, Trustees.

*Assignment for Benefit of Creditors by Surviving partner
—Deed of Lunatic—Rights of Creditors—Demurrer—
Action to Set aside Deed—Involuntary insolvency.*

A surviving partner has the right to make an assignment of the property of the firm for the benefit of the firm's creditors, if in so doing he does not violate any of the provisions of the insolvent laws of the State.

The deed of a lunatic in trust for the benefit of creditors is not void, but only voidable.

Creditors, unless restrained by the provisions of the insolvent laws of the State, are entitled to institute proceedings to have a deed of trust for the benefit of creditors set aside, on the ground, that at the date of its execution their debtor, the grantor, was a lunatic.

An assignment for the benefit of creditors, executed by a person in his own right, and as surviving partner, of all partnership and individual property, is to be regarded as an assignment of partnership property for the benefit of partnership creditors, and of separate property for the benefit of separate creditors, and is valid.

---

\*With the above case, as published in 19 *Law Rep. Anno'd,* 489, will be found a very excellent note on the validity of a deed made by an insane person.

Riley *vs.* Carter and Aiken, Trustees.

A deed in trust for the benefit of creditors, executed in duplicate, and in all essential respects exactly the same, will convey to the trustee the same interest and estate which he would have taken under a single deed.

An allegation in a bill of complaint that a deed of trust was made with *intent* to delay, hinder, and defraud creditors, and is therefore void, is legally sufficient, and charges with certainty a fact which is admitted by a demurrer to the bill of complaint.

A deed of trust for the benefit of creditors by the surviving partner purported to "grant, convey, and assign" to the trustees, their executors, administrators, and assigns all the property and estate, real, personal and mixed, of whatever kind and wheresoever situate, belonging to the grantor, as also the property, estate and assets whatsoever of the firm for the purposes therein set forth. HELD:

That the deed conveyed to the trustees all of the individual estate and property of the grantor, and all the property, estate, and assets of his firm, and all the real estate held in the firm's name, as also all that which stood in the names of the individual partners, or either of them, which had been purchased with partnership funds, and such real estate will be regarded in a Court of equity, for the purposes of the partnership, and between the partners and their creditors, as personal estate for the payment of partnership debts and the adjustment and winding up of the partnership concerns, subject to the operation and effect of the provisions of the insolvent laws of the State.

In the passage of the Act of 1880, ch. 172, and of the Acts amendatory thereto, creating a system of involuntary insolvency, the Legislature intended to secure to the creditors of those who were insolvent, or in contemplation of insolvency, the right to select the permanent trustee to settle and wind up the insolvent estate; and when the insolvent, by any act of his, seeks to frustrate the design of the law, after he has committed an act of insolvency condemned by the law, by executing an assignment for the benefit of creditors, even though it be made without preference, and convey all his property, any of such creditors, holding claims against the insolvent debtor of the amount required by the statute, can within four months of such act of insolvency, file a petition to have the insolvent debtor adjudicated an insolvent, the appointment of the conventional trustee set aside, and a permanent trustee appointed.

Riley *vs.* Carter and Aiken, Trustees.

APPEAL from the Circuit Court for Baltimore City.

The appeal in this case was taken from the decree of the lower Court (DENNIS, J.) sustaining the demurrer to the bill of complaint and dismissing said bill. The case is stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., BRYAN, FOWLER, PAGE, ROBERTS, McSHERRY, and BRISCOE, J.

*Richard S. Culbreth,* and *Samuel Snowden,* (with whom was *William J. O'Brien, Jr.,* on the brief,) for the appellants.

Before the change of the insolvent law in 1880, and the introduction of "involuntary insolvency," and the destruction of all preferences, there existed two systems of insolvency in this State. The insolvent law recognized in express terms deeds giving preferences and exacting releases. *Art. 48, sec. 13, of the Code of* 1860.

Under this law the common law right of the debtor to prefer one creditor over another was not interfered with, and a deed, therefore, by which he conveyed all his property without preferences, or a deed giving preferences and exacting releases, or an assignment of part of his property to secure the claims of one or more creditors, were alike valid. *Kettlewell vs. Stewart,* 8 *Gill,* 367, (*Brantly's Ed.*)

The real reason of the existence of these two systems was to enable merchants and others, who had foreign creditors, to get released from their debts, and in this way accomplish what could not be accomplished under the insolvent law. The power of preference and exacting releases was, however, greatly abused, and, therefore, the Legislature by the enactment of the Act of 1880, ch. 172, changed the whole system of insolvency, so that preferences were entirely abolished, as also separate assignments making preferences, which were in fact

only another form of preference. *Art.* 47, *sec.* 22, *of the Code; Act of* 1890, *ch.* 364.

Since then the insolvent law has by its stringent provisions against fraudulent preferences, and the enactment of the involuntary insolvency clause, made it absolutely incumbent on a man in failing circumstances either to take the benefit of the insolvent law, or else be forced to avail himself of its provisions, and thus to devote all his property to the payment of his creditors. *Art.* 47, *sec.* 22, *of the Code.*

Or if he does not desire to receive the benefit of that Act, then he may by a deed of assignment dedicate to the payment of his debts *all* his property, and have the right to select his own trustee, and have his estate administered in a Court of equity. *Art.* 47, *sec.* 15, *of the Code.*

No assignment of a part of his own property, or of partnership property, will now gratify the requirements of the law. *Second Nat. Bank of Baltimore vs. Willing & Co.*, 66 *Md.*, 344; *Armstrong, Cator & Co. vs. Martin & Marr*, 57 *Md.*, 400.

If the Legislature intended that the two systems of insolvency should be continued, it did not mean that there should be any other system than one which should accomplish precisely the same purpose as would be accomplished under the insolvent law, the great and leading principle of which is equality. *Bump on Fraud. Con.*, *sec.* 392; *Third Nat'l Bank of Baltimore vs. Lanahan, Trustee, et al.*, 66 *Md.*, 469.

It would therefore seem to follow that in order to be valid, a deed of assignment must on its face convey and assign to the trustee all the property of the grantor, and if he be a surviving partner, then all the interest of the deceased partner in the partnership property, and all the individual property of such deceased partner. 2 *Poe's Pldg.*, *sec.* 808; *Nat. Park Bank vs. Lanahan*, 60 *Md.*,

Riley *vs.* Carter and Aiken, Trustees.

510. As was always the case with deeds making prefer-ences. *Maughlin vs. Tyler,* 47 *Md.,* 545; *Loney vs. Bayly & Caldwell,* 45 *Md.,* 447; *Insurance Co. vs. Wallis and Thomas, Garns., &c.,* 23 *Md.,* 173; *Ferrall vs. Farnen,* 67 *Md.,* 76.

The question whether a surviving partner can make a deed of trust for the benefit of creditors is still an open one in this State. *Gable vs. Williams, et al.,* 59 *Md.,* 52.

And as a deed of this kind must upon its face convey every species of property which might belong to all or any of the debtors, a consideration of such property as this deed does not convey, will show beyond question that the deed in this case cannot be brought within the rule, and that it is impossible for a surviving partner to vest the title to all the property in the trustee. The title to the co-partnership real estate does not vest in the surviving partner, but descends to the heirs of the deceased partner. *Goodburn vs. Stevens,* 5 *Gill,* 1; *Ebert's Ex'rs vs. Ebert's Adm'rs,* 5 *Md.,* 357.

The interest of Andrew J. Nicholson, after the pay-ment of the partnership debts is directed to be paid over to his administrators. This is clearly the reservation of a part of the property for the benefit of the represen-tatives of said Andrew, without providing for the pay-ment of the individual creditors of said Andrew, or the application of any surplus of the individual property of said Andrew to the payment of the partnership creditors. *Sangston vs. Gaither,* 3 *Md.,* 40.

The individual property of Andrew J. Nicholson is not conveyed by the deed. The administrator does not represent the creditors, but the deceased. *Kinnemon, Adm'r vs. Miller,* 2 *Md. Ch. Dec.,* 408.

There were two deeds of trust made simultaneously— one of them was recorded in Baltimore County—the other was acknowledged and recorded in Baltimore City. The grantor lived in Baltimore County. Under the

statute no title vested until the bond was filed. *Art.* 16, *secs.* 205 *to* 210, *of the Code; Stiefel vs. Barton,* 73 *Md.,* 408.

Therefore the deed recorded in Baltimore County did not vest the title to real estate in Baltimore City, and the deed recorded in Baltimore City did not pass any property in Baltimore County. So that neither deed vested the whole property in the trustees, and it is impossible to put the two together and make one valid deed out of two bad ones.

These deeds did not vest the title to the real estate of the co-partnership, nor the individual property of Andrew J. Nicholson, nor the real or personal to the trustee, and therefore, the deeds did not convey *all* the property of the co-partners. The deeds then by their terms, operate to delay, hinder and defraud the creditors of Nicholson & Sons, and the intent to do so must be imputed to the parties and will be presumed. *Whedbee & Dickinson vs. Stewart and Price,* 40 *Md.,* 414; *Price vs. Pitzer,* 44 *Md.,* 521; *Schuman vs. Peddicord,* 50 *Md.,* 563; *Main and Mc-Kellip vs. Lynch,* 54 *Md.,* 672; *Horwitz vs. Ellinger,* 31 *Md.,* 492.

It is not necessary to allege the particular facts and circumstances from which the intent may be deduced. The general allegation of intent to delay, hinder and defraud, as alleged in the bill, is sufficient, and this is admitted by the demurrer. *Story's Eq. Pldg.,* (10*th Ed.,*) *sec.* 252, *and note* 5, and authorities there cited, especially *Clarke vs. Periam,* 2 *Atk.,* 337, (340.)

Without the presence of the fact that the assignor had, by proceedings under section 22 of Article 47 of the insolvent law, been forced into insolvency, it would, in order to make an assignment for the benefit of creditors valid, be necessary that it should convey *all* the property of the assignor, both co-partnership and individual—but if the assignor has, within four months

subsequent to such proceedings, been adjudged an insolvent, then such an assignment is condemned by the insolvent law. *Art. 47, secs. 3, 17, 22 and 24, of the Code; Act of 1890, ch. 364, sec. 14; Castleberg vs. Wheeler, et al., 68 Md., 580; Bump on Bankruptcy, page 423; Bankrupt Act, sec. 39.*

The two deeds in this case only conveyed to the trustee such property as Johns H. R. Nicholson had as an individual, and such personal property of the firm as he had in his possession, and *his* interest in the real estate. The interest of the deceased partner in the real estate, as partner, and in his own right and his personal estate, did not pass.

The assignment was, therefore, only a partial one. As only a part of the property passes by it, the balance of the property left is subject to seizure by any creditor who may have a right to attach it or seize under an execution.

If such a deed is valid under the insolvent law, it would lead to frauds of the worst kind. The creditor to whom the earliest information of the fact of property being left out of the assignment was conveyed, would be able to secure a preference over the creditors who would take under the deed. The recognition of general deeds by the law, excludes the idea of assignments of part of the property. So exceedingly strict is the construction that even a small fee for drawing the deed avoids the assignment. *Wolfsheimer vs. Rivinus,* 64 *Md.,* 230.

If the keeping back such a small sum makes such a preference as avoids the deed, how much more ought the leaving out the property of one partner, and allowing it to be seized by other creditors, make a preference in their favor. For preferences are void, "howsoever the same may be made." *Act of* 1890, *ch.* 364.

This assignment, conveying only a part of the co-partnership property, makes manifest an intent to delay,

hinder and defraud the creditors, both partnership and individual, as is charged in the bill, the fact charged in which is admitted by the demurrer.

A deed of trust is a deed of bargain and sale. The deed of bargain and sale of a lunatic is not voidable merely, but absolutely void. *Dexter vs. Hale*, 82 *U. S.*, 9; *Colegate D. Owing's Case*, 1 *Bland*, 370; *Corrie's Case*, 2 *Bland*, 490.

The deed of bargain and sale being void, and not voidable merely, his heir and *all others* may assert its nullity. *Dexter vs. Hall*, 82 *U. S.*, 22; *Evans vs. Horan and Preston*, 52 *Md.*, 610.

This Court said, in the latter case, that if the deed be void, it is clear that those who are obstructed by it from the enjoyment of any right can call it in question, and vacate it in any proceeding where its invalidity may be asserted.

The deed being made by an insane man or under undue influence nevertheless places a bar between the creditor and the realization of his money from the property of the debtor, and therefore hinders, delays and defrauds him as much so as if the debtor had committed actual fraud. The *cestuis que trust* who are thus delayed have a right to invoke a Court of equity to interfere in their behalf, by setting aside the deed and devoting the property to the payment of their debts. *Haugh, et al. vs. Maulsby, et al.*, 68 *Md.*, 423.

*John Watson, Jr.*, and *William A. Fisher*, for the appellees.

The averment that Johns H. R. Nicholson was a lunatic, of weak mind, and unduly influenced, does not support the right to maintain the bill. If the averments were true, the deed would be at most voidable, not void, and it could be avoided only by a person who is in privity with the grantor, and by a proceeding taken

directly for the purpose.  *Key's Lessee vs. Davis*, 1 *Md.*, 43; *Jackson vs. Gumaer*, 2 *Cowen*, 552, 568; *Evans vs. Horan and Preston*, 52 *Md.*, 609-10; *Allis vs. Billings*, 6 *Metc.*, 415; *Arnold vs. Richmond Iron Works*, 1 *Gray*, 434.

The same proposition was treated as being applicable to a bill of sale.  *Chew and Goldsborough vs. Bank of Baltimore*, 14 *Md.*, 318.

The deed in question was one beneficial to the lunatic, and in pursuance of a duty which he owed to the creditors, and it would not, therefore, be set aside even at the instance of persons in privity with him.  *McCormick vs. Littler*, 85 *Ill.*, 62; *Scanlan vs. Cobb*, 85 *Ill.*, 296; 1 *Addison on Contracts*, (149*); *Nat. Park Bank vs. Lanahan*, 60 *Md.*, 510.

Under no circumstances could creditors possess the right to object to the deed in the absence of some fraud upon their rights.  Creditors are not privies.  *Zouck vs. Parsons*, 3 *Burrow*, 1804.  Lord COKE's division of privies:  (*a.*) blood; (*b.*) in estate; (*c.*) in law.  1 *Taylor on Ev.*, (6th *Eng. Ed.*) secs. 77, 712; 1 *Greenleaf on Ev.*, sec. 189; *Carrier vs. Sears*, 4 *Allen*, 337.

. A creditor is within neither class.  Even a judgment creditor has no *jus in re*.  *Freeman on Judgments*, sec. 338; *Coombs vs. Jordan*, 3 *Bland*, 297, &c.; *Eschbach vs. Pitts*, 6 *Md.*, 77.

By the rules of equity, a creditor could not file his bill to set aside a conveyance by a debtor as fraudulent until he had procured a judgment; he could not be heard until he was interfered with in the appropriation of the debtor's property to the payment of the debt.  No creditor can be said to be hindered until the debtor's property is withdrawn from the payment of his debts.  *Bump on Fraud. Con.*, pages 521-3; *Griffith vs. Frederick Co. Bank*, 6 *G. & J.*, 438-9; *Kalkman vs. McElderry*, 16 *Md.*, 68; *Ferrall vs. Farnen*, 67 *Md.*, 81.

The right of a creditor to file a bill without judgment is derived wholly from the statute, is limited to cases of fraud, and does not extend to alleged lunacy. *Art. 16, sec. 46, of the Code; Birely vs. Staley*, 5 *G. & J.*, 452; *Griffith vs. Fred. Co. Bank*, 6 *G. & J.*, 414; *Wanamaker vs. Bowes*, 36 *Md.*, 56.

No difficulty arises now from the execution and recording of duplicate copies of the deed in the city and the county. They are identical, and the two papers are the same deed in fact, and the same bond was given in each clerk's office.

If, however, the papers could be treated as separate deeds, the result would be the same.

If one deed only passed the personalty and the real estate in the county, then the real estate in the city remaining in the grantor was passed by the other deed, and the trustees received all on the same trusts.

There is no doubt of the right of the surviving partner to execute the deed. *Gable vs. Williams*, 59 *Md.*, 52; *Williams, et al. vs. Wheedon*, 109 *N. Y.*, 336, 340; *Emerson vs. Senter*, 118 *U. S.*, 3.

The averment that the deed was made with intent to hinder, delay and defraud, lends no additional force to the bill. It is not an averment of any facts indeed, and is supported by no statement of particulars. All the facts upon which the plaintiffs relied had been stated, and the averment is of a conclusion drawn from the facts by the plaintiffs. Such a mode of averment is not sufficient. *Blondheim, et al. vs. Moore*, 11 *Md.*, 366-7, 374-5.

The averment was insufficient also for another reason. The *intent* mentioned may have been, and the contract indicates that it was, the intent of the grantor only. It must extend to an inclusion of the trustees in the fraudulent purpose. *Ferrall vs. Farnen*, 67 *Md.*, 81-2.

The subsequent adjudication of the insolvency of the grantor cannot affect the rights of the grantees under the deed.

Sections 14 and 22 of Article 47 of the Code, recognize fully the validity of fair deeds for the equal benefit of creditors. They are favorites of equity. *Ferrall vs. Farnen*, 67 *Md.*, 81-2; *Strauss, et al. vs. Rose*, 59 *Md.*, 532-3; *Kalkman vs. McElderry*, 16 *Md.*, 68.

ROBERTS, J., delivered the opinion of the Court.

The demurrer to the bill of complaint in this case presents for the consideration of this Court, questions of more than ordinary interest and importance. The appellants on the 22nd of January, 1892, in their own right, and in behalf of all creditors becoming parties thereto, filed their bill in the Circuit Court of Baltimore City, for the purpose of setting aside two deeds, which were exact duplicates, and had been on the 14th of January, 1892, executed by Johns H. R. Nicholson, in his own right, and as surviving partner of the firm of J. J. Nicholson & Sons, to John M. Carter, and Matthew K. Aiken, trustees, for the benefit of the firm creditors of J. J. Nicholson & Sons, and the individual creditors of Johns H. R. Nicholson. The deeds on their face profess to convey to the trustees, all of the property and estate of Johns H. R. Nicholson, and also all the estate of the late firm of J. J. Nicholson & Sons. The bill seeks to have said deeds set aside as being void against creditors, and asks the appointment of a receiver to distribute the assets of said firm and of Johns H. R. Nicholson. The firm of J. J. Nicholson & Sons, composed of Johns H. R. Nicholson, and Andrew J. Nicholson, bankers doing business in Baltimore City, was dissolved on the 5th of January, 1892, by the death of the said Andrew J. Nicholson. The surviving partner took possession of the firm's assets, and continued the business. Shortly after

the death of the said Andrew, the said John M. Carter
and Rebecca T. Nicholson were, by the Orphans' Court of
Baltimore City, granted letters of administration on
his personal estate.   Andrew, the deceased partner,
resided in Baltimore City, where one of said deeds was
filed for record.   Johns H. R., the surviving partner,
resided in Baltimore County, where the other of said deeds,
was a few hours later filed for record.   Since the execu-
tion of said deeds, and within twenty days thereafter,
to wit, on the 24th of February, 1892, the said Johns H.
R. Nicholson, was by the Circuit Court for Baltimore
County, adjudicated an insolvent, under the involuntary
provisions of the insolvent laws of Maryland, and Samuel
D. Schmucker was elected by the creditors, and approved
by the Court as his permanent trustee, and duly quali-
fied as such trustee.   The said trustees, Carter and
Aiken have taken possession of the property, estate, and
assets of said firm, and the individual assets of the said
Johns H. R. Nicholson, and are now engaged in the
administration of the trusts sought to be created by
said deeds, under the orders of the Circuit Court of Balti-
more City, passed upon an *ex parte* petition filed by
said trustees.   There is exhibited with said petition a
copy of the deeds of trust recorded in Baltimore City.
Before we proceed with the consideration of the various
questions which the record presents, we desire to state
that although it may not be necessary that all of the ques-
tions before us on this appeal should receive judicial
interpretation, yet many, if not all of them, are of
importance to the commercial interests of the State, and
have been argued with marked ability, exhibiting care-
ful research, so that we deem it only just and proper to
review and pass upon all the questions properly before us.

1. The first questions which suggest themselves to
our consideration arise out of the execution of the two
deeds which have been assailed.   It is contended by the

appellants that a surviving partner has no authority to execute such a deed, and that Johns H. R. Nicholson, the surviving partner in this cause, being *non compos mentis*, was legally incapacitated to execute and deliver the deeds in question. The authority of a surviving partner to execute a deed for the benefit of creditors, was at one time seriously controverted, and the decisions were by no means uniform; but the question has of recent years received the fullest consideration, and must now be regarded as practically determined in favor of the right of the surviving partner to assign, if in so doing he does not violate any of the provisions of the insolvent laws of the State of Maryland. It was a question in *Gable vs. Williams*, 59 *Md.*, 52, and this Court through its Chief Justice said: "It may be conceded that Gable, as surviving partner, could lawfully make a general assignment of partnership property to trustees for the payment of debts, provided such assignment be in all respects just and equitable, and made for the equal benefit of all the creditors interested in the deed. While such right in the surviving partner has not been in all cases approved, it would seem to be sanctioned by several well considered cases of high authority. *White vs. Union Ins. Co.*, 1 *Nott and McCord*, 556; *Shanks vs. Klein*, 104 *U. S.*, 18; *Burrill on Assign.*, (*3rd Ed.*,) sec. 39. In some cases the right to make such general assignment would seem to be questioned, unless it appears that such assignment had been made with the assent of representatives of the deceased partner. *Hutchinson vs. Smith*, 7 *Paige*, 35; *Egberts vs. Wood*, 3 *Paige*, 520; *Barecroft, et al. vs. Snodgrass, et al.*, 1 *Coldw.*, 441." The following authorities directly sustain the views of this Court. *Emerson vs Senter*, 118 *U. S.*, 3; *Atchison vs. Jones*, (*Ky.*,) 1 *S. W.*, 406; *Williams, et al. vs. Wheedon*, 109 *N. Y.*, 336; *Patton vs. Leftwich*, 86 *Va.*, 421; *Hanson vs. Metcalf*, 46 *Minn.*, 25; *Haynes, et al. vs. Brooks, et al.*, 116 *N. Y.*, 489; *Wall-*

*ing, et al. vs. Burgess, et al.,* 122 *Ind.,* 299, *and* 22 *N. E.,*
419; *Burnside, et al. vs. Merrick, et al.,* 4 *Met.,* (*Mass.,*)
537.

2. In this case a serious question attaches to the right
to assign, which involves the right of a lunatic to exe-
cute a deed.   The pleadings in the cause concede that
Johns H. R. Nicholson, at the time of the execution of
the two deeds, was.*non compos mentis.*   It is contended
on the part of the appellants that *Colegate D. Owings'
Case,* 1 *Bland,* 390, and *Corrie's Case,* 2 *Bland,* 490, have
determined, that the deed of a lunatic is not voidable,
but absolutely void, and they cite *Dexter vs. Hall,* 15
*Wall.,* 9, as affirming the doctrine of those cases.   But
we cannot concur in this view, nor has this Court ever
so decided.   The Supreme Court in passing upon the
questions under consideration in *Dexter vs. Hall,* did not
have before them the validity of a deed of conveyance,
but of a power of attorney.   Infants and lunatics stand
very much upon the same plane, so far as Courts of
equity are concerned, and it has been universally held
that the power of attorney of an infant is absolutely
void, and so the Supreme Court, in *Dexter vs. Hall,* held
that the power of attorney of a lunatic was void, and
rested their decision on the analogy existing between
the rights of infants and those of lunatics, and says:
"In fact we know no case of authority in which the.
letter of attorney of either an infant or a lunatic has
been held merely voidable."   This they could not have
said respecting deeds of conveyance, as the Reports of
the State Court contain numerous decisions affirming
the view that the deed of a lunatic is not void, but only
voidable.   The firm of J. J. Nicholson & Sons had been
for a long series of years engaged in the business of
banking in the City of Baltimore; a member of the
firm having died, a dissolution of the partnership was
the consequence.   Business complications soon followed,

and, for the purpose of settling up the affairs of the firm, the surviving partner executed the deeds in question. In this State it has never been doubted that a debtor in failing or embarrassed circumstances had the right to execute a deed of trust for the benefit of creditors, when he dedicated all his property and estate to the payment of his debts. The question of a lunatic's authority under certain circumstances to execute a valid deed has, on more than one occasion, received judicial interpretation by this Court. In *Evans vs. Horan and Preston*, 52 *Md.*, 610, this Court speaking through the late Justice MILLER, said: "The exact question which the record presents is this: Is a deed of bargain and sale of real estate made upon a valuable consideration, duly acknowledged, and duly enrolled or recorded under our registry Acts, void or merely voidable by reason of the fact that at the time it was executed, the grantor was *non compos mentis?* Without advancing or at all sanctioning the broad doctrine that *every act* of a lunatic or infant is voidable, and *not* void, we are of opinion that the deed in question does not belong to that class which the law deems absolutely void. This, we think, has been established as the law of this State, whatever may be the conflict of authority elsewhere. We refer to the cases of *Key's Lessee vs. Davis*, 1 *Md.*, 32, and *Chew & Goldsborough vs. Bank of Baltimore*, 14 *Md.*, 299, and the reasoning and authorities cited and relied on by the Court in those decisions. The cases of *Wait vs. Maxwell*, 5 *Pick.*, 217; *Jackson vs. Gumaer*, 2 *Cowen*, 552, and *Breckinridge's Heirs vs. Ormsby*, 1 *J. J. Marshall*, 236, are directly in point. Many other more recent decisions of the State Courts to the same effect might be cited, but it is unnecessary, inasmuch as we consider the decisions of our predecessors as having settled the law of Maryland upon this subject A few brief quotations from the opinion in

*Key's Lessee vs. Davis,* will show the grounds upon which
the doctrine is rested, and how cautiously it is guarded
and limited. 'In England,' says the Court, 'it appears
to be well settled, as it is in this country, where the
common law has not been abrogated by statutory enact-
ments, that the feoffment of a lunatic or idiot, in person,
is only voidable, and not void. The reason assigned for
this is, that the solemnity and formalities of livery of
seizin, together with the necessary participation of
others in the act, and its notoriety, presupposes that the
incapacity of the party was not apparent.' For this,
reference is made, among other authorities, to the case
of *Thompson vs. Leach, Carthew,* 435. The Court then
adds: 'In this State it has been adjudged by the Court
of Appeals, in *Matthews vs. Ward's Lessee,* 10 *G. & J.,*
433, that livery of seizin has been abolished, and that
enrollment is equivalent to it, and has been substituted
in its place. Indeed the Act of 1776 provides for re-
cording deeds of feoffment, as well as other deeds, and
the Act of 1715, declares the livery of seizin shall not
be necessary where a deed is enrolled. The propriety of
this decision, and the result to which it leads, no one
can controvert. If the acquiescence of those whose pre-
sence and participation, which are necessary to consti-
tute a good livery of seizin, are sufficient to rescue the
act of the lunatic from the presumption of being totally
void, much more ought the attention of the magistrates
who took the acknowledgment, and the clerk's certifi-
cate of enrollment, which accompanies the deed of bar-
gain and sale of the present day, have a similar effect.
From this doctrine, it would seem to follow as a neces-
sary consequence, that in this State the deed of bargain
and sale of a lunatic, when it has been executed with
all the usual formalities required by law, and duly
enrolled, would in any case, like a feoffment in person,
be only voidable and not void.'' The view adopted by

this Court is in accordance with the generally accepted doctrine of numerous decisions of other States. *Riggan vs. Green,* 80 *N. C.,* 236; *Miles vs. Lingerman,* 24 *Ind.,* 387; *Wait vs. Maxwell,* 5 *Pick.,* 217; *Hovey vs. Hobson,* 53 *Me.,* 451; *Dennett vs. Dennett,* 44 *N. H.,* 538; *Eaton vs. Eaton,* 8 *Vroom,* 108; *Blakely vs. Blakely,* 33 *N. J. Equity,* 508; *Snowden vs. Dunlavey,* 11 *Penn. St.,* 525; *Ingraham vs. Baldwin,* 9 *N. Y.,* 45, (5 *Seld.*); *Breckinridge's Heirs vs. Ormsby,* 1 *J. J. Marsh.,* 236; *Fitzgerald vs. Reed,* 9 *Smedes & M.,* (*Miss.*), 94; *Allis vs. Billings,* 6 *Metc.,* (*Mass.*), 415; *Allen vs. Berryhill,* 27 *Iowa,* 540; *Elston vs. Jasper,* 45 *Texas,* 409; 1 *Chitty on Contracts,* 188, (11*th Am. Ed.*); *Parsons on Contracts,* 384.

3. It is a contention of the appellees that none but privies in blood or in estate or in law, can assail a deed of the character in controversy here, which is sought to be impeached on the ground that the surviving partner was a lunatic at the time of the execution of the same, and that creditors do not stand in such relation to said conveyances as entitle them to file a bill in the nature of this proceeding. That their relation is purely contractual, and in no sense that of privies. Whilst the authorities incline to this view of the question in their application to deeds of persons *non compos mentis* conveying estates unaffected by the rights of creditors, we have, after careful examination, been able to find no case applying this doctrine in which the rights of creditors have been involved. But independently of all considerations save a just and proper regard for the rights of creditors, touching a deed, which professes to have been executed solely for the payment of their claims, and the protection of their rights, it would seem to be an anomaly, that privies in blood, or estate, or in law, should alone enjoy the privilege of inquiring in a Court of equity, where the rights of lunatics are especially cared for, whether a deed, which practically builds

Riley *vs.* Carter and Aiken, Trustees.

a Chinese wall around their claims, has not dealt fraudulently with their rights. If the lunatic be alive, and have no guardian, no one then but the lunatic himself is entitled to take action, and he is the one most unlikely to do so. It is only after death that the privies in blood or estate can exercise this right. We think reason and justice alike demand that under such circumstances the creditors, unless restrained by the provisions of the insolvent laws, are entitled to proceed by appropriate remedy for the protection of their rights. It is not the policy recognized by the Courts of the present day to limit the right of inquiry; to the contrary, they seek to give practical application to the maxim, *"ubi jus ibi remedium."* Chief Justice HOLT in *Ashby vs. White,* 2 *Ld. Raymond,* 952, observes that when a man has a right, he must have a means to vindicate, and maintain it, and a remedy, if he is injured in the exercise and enjoyment of it.

4. We do not concur in the objection urged against these deeds by the appellants, which is set out in the sixth paragraph of said bill, to the effect that the said Johns H. R. Nicholson as surviving partner of J. J. Nicholson & Sons, *"but not in his own right,"* did on the 14th of January, 1892, execute said deeds which purport to convey to said trustees, their heirs, &c. all *his,* the said Johns H. R. Nicholson's estate, &c. In *Moody vs. Downs,* 63 *N. H.,* 50, the Court says, "an assignment for the benefit of *'my'* creditors, by a surviving partner of all partnership and individual property, was considered as an assignment of partnership property for the benefit of partnership creditors, and of separate property for the benefit of separate creditors, and held valid."

5. It is also claimed by the appellants that, in consequence of the execution of two deeds, neither deed vested the whole property in the trustees, and that it is

Riley *vs.* Carter and Aiken. Trustees.

impossible to put the two together, and make one valid deed out of two bad ones. (Appellants' brief, fol. 8). Whilst it is true that if one of the deeds in question had been first recorded, and there had then been annexed to it a proper certificate of the official character of the justice, before whom it had been acknowledged, and then recorded in the proper office, there would have been accomplished the object in view quite as thoroughly as by the two deeds, but the legal effect of the two, being executed in duplicate, and in all essential respects exactly the same, cannot be other than to convey to the trustees the same interests and estate which they would have taken under the one deed. It is not a practice to be commended, but there is no doubt as to its legal effect. *Burrill* in his work on *Assignments, sec.* 128, says, "A general assignment, though usually made by one deed or instrument, may be made as effectually by several instruments relating to the same subject-matter." To the same effect is *Kruse vs. Pindle,* 8 *Oregon,* 153, where two conveyances operating as an assignment were executed at the same time, between the same parties, and relating to the same subject-matter, the Court held that they should be construed together as forming parts of a single conveyance. Sustaining the same view is the case of the *South Branch Lumber Company vs. Ott, et al.,* 142 *U. S.,* 622.

6. The appellants, in the thirteenth paragraph of their bill, allege that the said two deeds, dated on the 14th of January, 1892, were made with "intent" to delay, hinder and defraud the creditors of the said firm of J. J. Nicholson and Sons, and of the said Johns H. R. and Andrew J. Nicholson, individually, and are therefore void. It is contended by the appellees that the averment of the bill is only an inference and is not a fact, and that the demurrer does not admit the truth of the conclusion sought to be drawn. We, however,

think the averment legally sufficient, and that it charges
with certainty a fact which the demurrer admits. There
is no substantial difference whether it is charged that
the deeds were made with "the intent," or that they did
actually delay, hinder, and defraud. *Hilliard*, in his
work *on Bankruptcy, p.* 13, *sec.* 25, says, "It is in gene-
ral expressly provided that acts of bankruptcy must be
done with *intent* to delay creditors, and this *intent*, rather
than the *actual result*, is held to constitute the essence
of the act. If the allegation in the bill had omitted *the
intent* and simply charged that the deeds, as executed,
*hindered*, *delayed* and *defrauded* the creditors of the
grantor, the legal effect would have been the same." In
the case of *Schuman vs. Peddicord*, 50 *Md*., 563, ROBIN-
SON, J., delivering the opinion of this Court, said: "Nor
is it necessary, in order to bring the conveyance within
the spirit of the statute, that there should be an '*actual
intent*' on the part of the grantor to perpetrate a fraud.
If the necessary effect and operation of the instrument
be to *hinder*, *delay* or *defraud* creditors, the legal pre-
sumption is, that it was made for that purpose. *Grover
vs. Wakeman*, 11 *Wend*., 187; *Sturdevant vs. Davis*, 9
*Iredell*, (*Law*,) 365; *Enders vs. Swayne*, 8 *Dana*, 103;
*Nicholson vs. Leavitt*, 6 *N. Y.*, 510, (2 *Seld.*); *Janes vs.
Whitbread*, 20 *Law. J. C. P.*, (*N. S.*), 217. Notions of
right and wrong vary of course with each individual
person, and in declaring that every one must intend the
legal consequences of his own voluntary act, the law pro-
vides a more certain and reliable standard by which the
intention is to be ascertained. Wherever then the effect
of a conveyance is upon its face to hinder and delay cre-
ditors, it will be construed as void against such creditors,
without stopping to inquire what may have been the
actual intention of the grantor." This view has been
generally accepted as the correct interpretation of the
law. In summing up the law on this point, Mr. *Wal-*

Riley *vs.* Carter and Aiken, Trustees.

*lace,* in his notes to 1 *Am. Leading Cases,* (*Ed.* 1852), 96, says: "An assignment in trust for creditors, which by its provisions *tends* to hinder or delay creditors, is fraudulent and void in law."

7. It is urged as an objection to the deeds that they do not convey all the property of the firm and of the individual partners, and, unless all such property has been conveyed, the deeds are void. In this case the two deeds "grant," "convey," and "assign" unto John M. Carter, and Matthew K. Aiken, their executors, administrators, and assigns, all *his,* the said Johns H. R. Nicholson's property and estate, real, personal and mixed, of whatever kind and wheresover situate, as also the property, estate, and assets whatsoever of the said firm of J. J. Nicholson and Sons, in trust, for the purposes therein set forth. Can there be any reasonable doubt as to what those deeds convey? Under the decisions of this Court, of numerous other State Courts, and of the Supreme Court of the United States, it has been repeatedly held that: "The doctrine that real estate purchased with the partnership funds, for its use, and on its account, is to be regarded in a Court of equity as the personal estate of the company, for all the purposes of the partnership, stands upon a familiar and just principle. It is the clear case of an implied or constructive trust, resulting from the relation which the partners bear to each other, and from the fact that the estate was brought into the firm, or purchased with the funds of the partnership, for the convenience and accommodation of the trade. For this reason, in whosesoever name the legal title may reside, the estate is held, in the eye of a Court of equity, for the use of the partners, as the *cestuis que trust;* and if a partner dies, the legal estate of which he was seized as a tenant in common, passes to his heirs or devisees, clothed with a similar trust, in favor of the surviving partners, until the purposes for which it was

Riley *vs.* Carter and Aiken. Trustees.

acquired have been accomplished." *Goodburn and Wife vs. Stevens, et al.,* 5 *Gill,* 27. And again, this Court in *Ebert's Ex'rs vs. Ebert's Adm'rs,* 5 *Md.,* 338, affirming *Goodburn and Wife vs. Stevens, et al.,* says: "That real property purchased with partnership funds, and for partnership purposes, is to regarded, upon the death of a partner, in a Court of equity, as *between the partners and their creditors,* personal estate, for the payment of partnership debts, and the adjustment and winding up of the partnership concerns." This doctrine has been fully recognized in the case of *Shanks vs. Klein,* 104 *U. S.,* 18. Mr. Justice MILLER, delivering the opinion of the Court, says: "It is an equitable right accompanied by an *equitable* title. It is an interest in the property, which equity Courts will recognize and support. What is that right? Not only that the Court will, when necessary, see that the real estate so situated is appropriated to the satisfaction of the partnership debts, but that for that purpose, and to that extent, it shall be treated as personal property of the partnership, and like other personal property pass under the control of the surviving partner. This control extends to the right to sell it, or so much of it, as may be necessary to pay the partnership debts, or to satisfy the just claims of the surviving partner. It is beyond question that such is the doctrine of the English Court of Chancery, as stated by counsel for appellant. As this result was reached in that Court without the aid of any statute, it is authority of very great weight in the inquiry as to the true equity on the subject. We think, also, that the preponderance of authority in the American Courts is on the same side of the question." The same view is maintained by Chief Justice SHAW, in *Dyer vs. Clark,* 5 *Metc., (Mass.),* 562; also by *Delmonico vs. Guillaume and Delmonico,* 2 *Sandford Ch.,* 366; to the same effect are the English cases, *Fereday vs. Wightwick,* 1 *Russ. & M.,* 45; *Phillips vs.*

*Phillips,* 1 *Mylne & K.,* 649; *Cookson vs. Cookson,* 8 *Sim.,* 529. In *Andrews' Heirs and Adm'rs vs. Brown's Adm'rs,* 21 *Ala.,* 437, the Court says: "Inasmuch as the real estate is considered as personal for the purpose of paying the debts of the firm, and the surviving partner is charged with the duty of paying these debts, it must of necessity follow, that he has the right in equity to dispose of the real estate for this purpose, for it would never do to charge him with the duty of paying the debts, and at the same time take from him the means of doing it. Therefore, although he cannot by his deed pass the legal title to the purchaser, which descended to the heir of the deceased partner, yet, as the heir holds the title in trust to pay the debts, and the survivor is charged with this duty, his deed will convey this equity to his purchaser, and through it he may call on the heir for the legal title, and compel him to convey it." Confirming this view is the case of *Dupuy vs. Leavenworth,* 17 *Cal.,* 262; Chief Justice FIELDS delivering the opinion of the Court, says: "In the view of equity it is immaterial in whose name the legal title of the property stands,—whether in the individual name of one co-partner, or in the joint names of all; it is first subject to the payment of the partnership debts, and is then to be distributed among the co-partners according to their respective rights. The possessor of the legal title in such case holds the estate in trust for the purposes of the co-partnership. Each partner has an equitable interest in the property until such purposes are accomplished. Upon the dissolution of the co-partnership by the death of one of its members, the surviving partner, who is charged with the duty of paying the debts, can dispose of this equitable interest and the purchaser can compel the heirs-at-law of the deceased partner to perfect the purchase by conveyance of the legal "*title.*" We further cite the following cases as fully sustaining

the doctrine of this Court: *Fairchild vs. Fairchild,* 64 *N. Y.,* 471; *Uhler vs. Semple,* 20 *N. J. Eq.,* 288; *Buchan vs. Sumner,* 2 *Barb. Ch.,* 165, approved and adopted in *Collumb vs. Reed,* 24 *N. Y.,* 505; *Evans vs. Gibson,* 29 *Mo.,* 223; *Fall River Whaling Company vs. Borden,* 10 *Cushing, (Mass.),* 458. We may have gone to unnecessary length in presenting the views of the Court upon the question, but we were induced to do so, from the fact that there seemed to be some misapprehension of the doctrine determined in *Goodburn and Wife vs. Stevens, et al.,* and *Ebert's Ex'rs vs. Ebert's Adm'rs, supra;* and further, since the decisions of this Court in the cases just quoted, the question has, by other Courts, undergone careful consideration, and conclusive determination, to which we have thought proper to refer as illustrating and sustaining the views of this Court.

We think the surviving partner in this case has conveyed to the trustees named, all of his individual estate and property, and all the property, estate and assets of his firm, and that the conveyance covers all the real estate held in the firm's name, situate either in Baltimore City or County, including also all that which stood in the names of the individual partners, or either of them, which had been purchased with partnership funds; and that a Court of equity will regard such real estate, for the purposes of the partnership, and between the partners and their creditors, as *personal estate,* for the payment of partnership debts, and the adjustment and winding up of the partnership concerns, subject however, in all respects, to the operation and effect of the provisions of the insolvent laws of the State.

8. The deeds assailed in this cause were executed on the 14th of January, 1892; the bill to set them aside was filed on the 22nd of the same month, and the said Johns H. R. Nicholson was, on the 24th of February, 1892, adjudicated an involuntary insolvent. The perma-

nent trustee, Samuel D. Schmucker, having been made a party defendant to this proceeding, has answered the same, in which he admits the adjudication of the said Johns H. R. Nicholson as an insolvent, and that he has duly qualified as his permanent trustee, and submits that the deeds of trust from Johns H. R. Nicholson to John M. Carter and Matthew K. Aiken which were made within four months prior to the adjudication in insolvency against the said Nicholson, were made to trustees of his own selection, who had no power to question any prior conveyances or preferences, and that said deeds are void, within the purview of the insolvent laws of Maryland, and that the title to the property sought to be conveyed by said deeds, is now vested in said permanent trustee; and further submits that, if the Circuit Court of Baltimore City shall, in the present case, consider and pass upon the question of the validity of the said duplicate deeds of trust to Messrs Carter and Aiken, then he is entitled to a decree therein declaring void said deeds, and that he is, in any event, entitled to a decree declaring that all the property, and estate of every kind, owned by the said Johns H. R. Nicholson on 24th of February, 1892, when he was adjudicated an insolvent, including the property which by said deeds, he attempted to convey to said Carter and Aiken, is now vested in him as permanent trustee, and that said decree should direct the said Carter and Aiken to transfer and deliver all such estate and property to said permanent trustee. Since the passage of the Act of 1880, chap. 172, and of the Acts amendatory thereto, this Court has not been called upon to determine the general scope and policy of said laws as applied in the settlement of the estates of involuntary insolvents. It is very clear, however, that full operation and effect have not been given to the involuntary clauses, which these Acts have ingrafted upon our insolvent system, and only a partial applica-

Riley *vs.* Carter and Aiken, Trustees.

tion has been made of the important provisions which they contain. It is a reasonable inference to draw from the terms and conditions, which the Legislature, in the passage of these laws, has employed, that it was the intention of the law making power, to recognize the rights and interests of those engaged in trade and commerce, and extend to them such protection as they were fairly and properly entitled to enjoy. The practice has long prevailed in this State, and, as already stated, has repeatedly received the sanction of this Court, of employing deeds of assignment for the benefit of creditors, as a means of adjusting, and settling insolvent estates. The practice then tolerated was not in conflict with either the spirit or the letter of existing law. The National Bankrupt Act of 1867, had, however, been sufficiently long in operation to have made a very positive impression upon mercantile classes, to the effect that some of its provisions were most salutary, and notably its involuntary clause, which constituted a fair protection to the creditor, without intefering with the just rights of the honest debtor; and in obedience to this sentiment, the Legislature of 1880, borrowed from the Bankrupt Act some of its most useful features, and applied them to our insolvent system, which are now in force in this State. When the case of *Castleberg vs. Wheeler, et al.*, 68 *Md.*, 266, 280, was before this Court, Mr. Chief Justice ALVEY suggestively inquired: "Whether, after committing an act of insolvency, and within the four months preceding the institution of proceedings, any more than after an act of bankruptcy and within the time for taking proceedings, a debtor can make a valid general assignment for the benefit of creditors, to a trustee of his own selection, who has no power to question any prior conveyances or preferences given, is a question we do not *now* deem it necessary to decide. Under the bankrupt law such general assignment could not be made to convey the

property of the debtor, as against the assignee in bankruptcy. *Buchanan vs. Smith,* 16 *Wall.,* 277; *Mayer vs. Hellman,* 91 *U. S.,* 496; *Boese vs. King,* 108 *U. S.,* 379. But here the deed of assignment does not appear to have been assailed or called in question by any one; and as long as it stands, it is effectual to transfer the assets to the trustee therein named; and the creditors, one and all, have a right to receive their just proportion of the fund according to the terms of the assignment. *Boese vs. King, supra.''* In the case of *Whyte, Trustee vs. Betts Machine Company,* 61 *Md.,* 182, this Court through Mr. Justice ALVEY, said: "These provisions of our insolvent law that relate to involuntary proceedings against the debtor, are largely borrowed from the Bankrupt Act of the United States; and the construction and practice that prevailed, while that law was in force, are entitled to great consideration in solving questions that arise under our statute.'' Turning, then, to some of the decisions of the United States Supreme Court, we find, Mr. Justice MILLER delivering the opinion of the Court in *Trimble vs. Woodhead,* 102 *U. S.,* 650, says, "The primary object of the bankrupt law is, to secure the equal distribution of the property of the bankrupt, of every kind, among his creditors. This can only be done through the rights vested in the *assignee,* and by the faithful discharge of his duties.'' *Mayer vs. Hellman,* 91 *U. S.,* 496; *Toof vs. Martin,* 13 *Wall.,* 40; *Glenny vs. Langdon,* 98 *U. S.,* 20.

The importance which properly attaches to the right of the creditors of the insolvent to elect the permanent trustee, subject to the approval of the Court, cannot well be overstated. The record of this appeal furnishes illustration of the correctness of the views herein expressed as to the propriety of allowing to the creditors of an insolvent the privilege of selecting, under the supervision of the Court, the person or persons in whom

they have confidence, and who are recognized as possessing the requisite qualifications to discharge the important duties pertaining to the office of permanent trustee. The bill in this case alleges, as one of the grounds for setting aside the deeds as fraudulent, that the trustees were both disqualified, and assign reasons therefor, which have been, in the argument in this Court, very earnestly pressed upon our consideration. This Court in *Waters vs. Dashiell,* 1 *Md.,* 471, through Mr. Justice TUCK, speaking with reference to a fraudulent deed says: "The trustee does not claim as an ordinary purchaser from the insolvent would. In such a case the grantee takes nothing. But here, he cannot be considered as voluntarily conveying the property. In fact, it is no part of his design to pass the title to the trustee for the benefit of the creditors, whom he has attempted to defraud by the previous assignment. But the trustee takes the property against the will of the grantor. The fraudulent intent is thus frustrated. * * * * The trustee becomes the mere officer of the law, designated not by the insolvent, but by the Court, to effect what the law designs, and nothing more. * * * It is conceded in argument, that if this were the case of an assignee claiming under the bankrupt laws, the title of the appellant would be good. Looking to the frame and design of our insolvent system, we cannot perceive that there is any material difference between it and the proceedings in bankruptcy, as far as the title to property so situated is concerned. * * * The design of these laws was to secure the property, so conveyed, to the use of creditors. Our insolvent system provides a person, whose duty it is to represent creditors, and to assert their claim to property fraudulently conveyed away by the petitioner." Chief Justice REDFIELD, speaking for the Court in *Mussey vs. Noyes,* 26 *Vt.,* 471, says: "Assignments made directly to the creditors, so as to require

them to name the trustee, and thus make him *their man, instead of his being, as is too often the case, the mere creature of the assignor*, are certainly entitled to the most favorable consideration of the Courts." And such, we think, is the policy which the Legislature has adopted and applied to our present insolvent system. So far back as the decision of this Court in *Alexander, et al. vs. Ghiselen, et al.*, 5 *Gill*, 179, Judge CHAMBERS, speaking of the laws then in force, said: "The leading and general design of all bankrupt and insolvent laws, is to insure a prompt and complete settlement of all the affairs of the party, and an early distribution amongst the creditors, as nearly in equal proportions as a regard to positive and acknowledged preferences will admit. To facilitate these objects, one law has wisely given to the trustee, to be appointed by the Court, the entire management of the estate, subject of course, to the control of the Court by whom he is appointed, charging him with the duty of paying off liens and incumbrances to which the estate might be subject. His duty requires him to make the earliest disposition and settlement regarding the interests of all the creditors, the particular lien creditor included, and brings all the claimants before one tribunal, whereas, by allowing sheriffs and mortgagees to participate in the administration of the trust, adverse interests are created, delays endangered, if not insured, and probably different and possibly conflicting tribunals consulted." See also *Pinckney vs. Lanahan*, 62 *Md.*, 447. There is no system of laws more thoroughly remedial than the provisions of the insolvent laws, and especially those which relate to involuntary insolvency. They guarantee justice and equality to each and every creditor according to his legal rights. They prevent all possible conflict of jurisdiction, obviate all confusion, and provide an entire administration of the insolvent estate in one Court. If further authority

were needed to sustain the views which we have expressed concerning the duties and powers of the permanent trustee in involuntary insolvency, it is only necessary to refer to the able and exhaustive opinion of Mr. Justice CLIFFORD in *Glenny vs. Langdon,* 98 *U. S.,* 20, where he treats of the jurisdiction of Courts of bankruptcy and the powers of assignees. But the conventional trustee is not clothed with the powers requisite to enable him efficiently to discharge the duties which devolve upon him; he is limited in his authority to act, and naturally prejudiced in favor of the assignor, because of the preference shown him in his selection as assignee. The theory upon which the assignor is permitted to select the assignee is without support under our insolvent law, and can no longer be sanctioned, if full effect is to be given to the involuntary provisions of the law. The record does not show with sufficient certainty the facts upon which the Circuit Court for Baltimore County adjudicated Johns H. R. Nicholson an insolvent, but the answer of Mr. Schmucker, the permanent trustee, supplies sufficient *data* for the purposes of this opinion. For illustration, suppose this state of case to exist: That said J. J. Nicholson & Sons, being bankers and doing business in the City of Baltimore, and being insolvent, or in contemplation of insolvency, did on the 14th of January, 1892, suspend payment of their negotiable paper, and failed to resume payment thereof for more than twenty days thereafter, and on the 9th of February, 1892, and within four months after the commission of the act of insolvency complained of, certain creditors filed their petitions in the proper Court to have them declared involuntary insolvents; and further that said J. J. Nicholson & Sons were on the 24th of February, 1892, adjudicated insolvent under the involuntary provisions of the law, in pursuance of said petition. Having committed an act of insolvency in failing to

resume payment of their negotiable paper, within twenty days after they had suspended payment, to wit, on the 14th of January, 1892, and the petition to adjudicate them insolvent, having been filed on the 9th of February, 1892, could J. J. Nicholson & Sons, by any act of theirs, suspend the operation or annul the effect of the provisions of the insolvent laws? A case somewhat analogous to the facts just stated is *In re Lauer,* 9 *Natl. Bank. Reg.*, 494, where an application for an adjudication of bankruptcy was made against the debtor, and the acts of bankruptcy alleged were that the debtor being a merchant, had suspended payment of his commercial paper, and had not resumed within a period of fourteen days; and it appears that before the expiration of the fourteen days, the debtor had made an assignment for the benefit of creditors, under the Ohio statute, it was held, that the assignment did not prevent the running of the fourteen days, and also held that the fact, that the State Court had acquired jurisdiction of the debtor's estate, did not prevent the Bankrupt Court from proceeding under the bankrupt law, notwithstanding no fraud was shown in the assignment. For us to adopt a different view is to declare that our involuntary insolvent laws are practically a nullity, and that they are wholly inadequate to accomplish the object which the Legislature had in view in their enactment. We however entertain no doubt as to their practical utility, and legal sufficiency, and believe that, when circumstances justify their application, they will be found to be both salutary and effective in the solution of the complications and irregularities which so often attend upon and frequently follow in the wake of insolvency. One of the most important attributes of the power of the permanent trustee in involuntary insolvency is that he is not limited to the assets and estate of which the insolvent was seized and possessed at the date of his adjudication as an insolvent, but his title

relates back to the commencement of the proceedings in insolvency, and takes effect from the date of the filing of the petition. Such, also, was the construction placed upon the powers of assignees under the Bankrupt Act. *Glenny vs. Langdon, supra; Conner vs. Long,* 104 *U. S.,* 228. We are of opinion that the Legislature in the passage of the Acts creating a system of involuntary insolvency, intended thereby to secure to the creditors of those who were insolvent, or in contemplation of insolvency, the right to select the permanent trustee, to settle and wind up the insolvent estate; and when the insolvent, by any act of his, seeks to frustrate the design of the law, after he has committed an act of insolvency condemned by the law, by executing an assignment for the benefit of creditors, even though it be made without preference, and convey all his property, nevertheless any creditor or creditors holding claims against the insolvent debtor of the amount required by the statute, can within four months after the commission of an act of insolvency, file a petition to have the insolvent debtor adjudicated an insolvent under the involuntary provisions of the law. This we think, is clearly the right of the creditor; but we must not be understood as deciding that the permanent trustee, after he has qualified as such, can delay the commencement of proceedings to set aside the assignment, until the conventional trustee has been permitted to proceed so far with the settlement of his trust estate, as to indicate that the permanent trustee is not only negligent of his rights and duties, but careless in their performance, and that he does not propose to take action in the premises. It would, however, be impossible to prescribe any positive rule, as to whether the application to set aside is made within a reasonable time or not, but this question can be safely left to the determination of the Courts having jurisdiction of the subject-matter. The Circuit Court, in the further con-

Riley *vs.* Carter and Aiken, Trustees.

sideration of this cause, will have before it all the parties necessary to a proper determination of the respective rights involved, and having jurisdiction of the subject-matter, it can proceed according to the usual order of the Court. *Haugh, et al. vs. Maulsby, et al.,* 68 *Md.,* 426. It follows from the views expressed that the decree should neither be affirmed nor reversed, but the cause must be remanded for further proceedings under Art. 5, sec. 36, of the Code, as relief may be given and decree passed between co-defendants; and, as the permanent trustee under the insolvent proceeding, sets up and makes claim by his answer of all the property embraced by the deeds, the Court may proceed to decree as the law requires.

*Cause remanded for further proceedings*
*under Art. 5, sec. 36, of the Code.*